*In re* LIC. EDGARGO G. RAYA.

*Número:* CE-85-579          *Resuelto:* 14 de noviembre de 1986

———

*Rafael Ortiz Carrión, Procurador General* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo; *Edgardo G. Raya, pro se.*

I

PER CURIAM: El Procurador General presentó una querella contra el Lic. Edgardo G. Raya, en la cual le atribuye haber incurrido en conducta que contraviene el Canon 9 del Código de Ética Profesional, consistente en "desobedecer en forma reiterada las órdenes del Tribunal Superior; y al exhibir éste una conducta altamente negligente en el cumplimiento de la susodicha orden del Tribunal Superior".[1]

---

[1] Querella presentada por el Procurador General.

Los hechos que motivan la presente querella según surgen del Informe del Comisionado Especial son los siguientes:

1. El querellado, Lic. Edgardo G. Raya, fue admitido al ejercicio de la profesión de abogado el 3 de enero de 1972 y al ejercicio del notariado el 5 de enero de 1972.

2. El 3 de abril de 1978 autorizó la escritura número tres sobre compraventa, por la cual los esposos Santos Rivera Rivera y Asunción Rivera Encarnación adquirieron una parcela de terreno por compra a doña Primitiva Tapia Molina. La anterior parcela resultó segregada de una finca de mayor cabida propiedad de varios herederos, entre los cuales estaba la vendedora. El 20 de julio de 1978, el licenciado Raya autorizó la escritura Núm. 13, por la cual los mencionados esposos adquirieron otra parcela de terreno por compra a doña María Mercedes Tapia, hermana de Primitiva Tapia. Esta segunda parcela también fue segregada de la misma finca que la anterior.

3. Las escrituras de compraventa de las parcelas no pudieron ser inscritas en el Registro de la Propiedad, ya que se omitió obtener la autorización de la Administración de Reglamentos y Permisos (A.R.P.E.) necesaria para la segregación y además por falta de tracto registral.

4. El 8 de mayo de 1980, luego de varias gestiones infructuosas, los compradores presentaron una demanda en el Tribunal Superior contra las vendedoras, en la cual solicitaban que se ordenara a las demandadas a otorgar escrituras libres de defectos para poder proceder con la inscripción en el Registro de la Propiedad. El tribunal dictó sentencia en rebeldía que declaraba con lugar la demanda y ordenaba a las demandadas a otorgar, en un término de treinta (30) días, las correspondientes escrituras libres de defectos a favor de los demandantes.

5. En su sentencia el tribunal de instancia previno al querellado, licenciado Raya, para que éste realizara las gestiones

para corregir las escrituras autorizadas y así "salvaguardar su responsabilidad profesional". La representación legal de la parte demandante en el pleito notificó al querellado por correo certificado, con copia de la sentencia dictada por el Tribunal Superior.

6. Luego de varios intentos judiciales tramitados por la demandante durante los años 1982 y 1983 para lograr que se corrigieran las escrituras conforme a la sentencia dictada, el Tribunal Superior emitió, en enero de 1984, una nueva orden a la parte demandada para que corrigiera las deficiencias dentro de sesenta (60) días. El querellado quedó personalmente enterado de ello, pues se encontraba presente en la vista que a esos efectos fue señalada.

7. Ante la falta de resultados positivos en relación con la inscripción de las escrituras autorizadas por el querellado, el 19 de octubre de 1984, el juez de instancia ordenó notificar al Procurador General con copia de los autos del caso.

8. Entre las faltas de las mencionadas escrituras estaba la ausencia de tracto. Las parcelas adquiridas por los esposos Rivera Rivera fueron segregadas de una finca cuyo título se transmitió por herencia. Al momento de la segregación y venta, la finca original se hallaba inscrita en común pro indiviso a favor de los herederos, entre los cuales estaban las vendedoras, sin que se hubiese practicado la correspondiente escritura de división de la comunidad.

9. Otra falta consistía en que no se adquirió el permiso de A.R.P.E. para la segregación de las parcelas vendidas. Además, al practicarse la mensura para proceder con la segregación y adjudicación de las parcelas a favor de los distintos herederos, posterior al otorgamiento de las dos escrituras autorizadas por el querellado, la finca principal de la cual se segregaron las parcelas vendidas resultó de una cabida menor a la que constaba en el Registro de la Propiedad.

10. Como condición para otorgar el permiso de segregación de las distintas parcelas, incluso las parcelas vendidas por medio de las escrituras autorizadas por el querellado, A.R.P.E. requirió que se cedieran unas áreas a favor de los Departamentos de Recursos Naturales y Obras Públicas del Estado Libre Asociado de Puerto Rico.

11. Estaban incorrectos los datos registrales de la finca principal suministrados a A.R.P.E. para obtener la autorización de la segregación de las parcelas vendidas en las escrituras autorizadas por el querellado. Esto requirió que posteriormente se acudiera nuevamente a dicha agencia para obtener la correspondiente resolución enmendada con la cita registral de la finca principal corregida. No fue hasta el 15 de febrero de 1985 que A.R.P.E. emitió la resolución enmendada.

12. Un error en cuanto a la cabida de la finca principal entre el certificado de mensura practicado al someterse a A.R.P.E. la solicitud de autorización para la segregación de las parcelas y el plano de mensura autorizado por dicha agencia, requirió que se acudiese a ésta nuevamente para corregir la discrepancia. La resolución enmendada en este otro sentido se emitió por A.R.P.E. el 25 de marzo de 1985.

13. En el ínterin, uno de los herederos cedió su participación indivisa en la finca principal a un tercero. Esto obligó a que el querellado autorizara una escritura sobre acta aclaratoria otorgada el 3 de abril de 1985.

14. Finalmente, en el mes de abril de 1986 se produce la inscripción en el Registro de la Propiedad de las parcelas objeto de las órdenes que promueven la presente querella.

15. Inscribir en el Registro de la Propiedad las transacciones de compraventa que se formalizaron por las escrituras autorizadas originalmente por el querellado requirió a éste autorizar seis (6) escrituras otorgadas en fechas comprendidas entre el 29 de diciembre de 1980 y el 3 de abril de 1985.

16. Con fecha de 22 de abril de 1986, el Sr. Santos Rivera Rivera acreditó, por declaración jurada prestada ante notario, no tener interés en la querella presentada en contra del licenciado Edgardo G. Raya, por cuanto las escrituras sobre compraventa autorizadas por éste y otorgadas a su favor figuraban inscritas en el Registro de la Propiedad para la referida fecha de 22 de abril de 1986.

17. A juicio del Comisionado Especial, la falta consistente en autorizar dos escrituras de compraventa sin obtener el permiso previo de A.R.P.E. para la segregación de los inmuebles vendidos, y el no haberse percatado el querellado de que la finca principal, de la cual se segregaron las parcelas objeto de las escrituras otorgadas ante él, permanecía inscrita en el Registro de la Propiedad en común pro indiviso, a favor de unos herederos, fueron factores que activaron en el ánimo de los compradores la presentación de la demanda en contra de los vendedores.

18. Por otro lado, las discrepancias surgidas en relación con la cabida registral de la finca principal en los documentos y planos sometidos a A.R.P.E., que requirieron la intervención del querellado con dicha agencia, unido a la venta de su participación indivisa que realizó uno de los herederos a un tercero, contribuyeron en gran medida a la demora atribuida al querellado en cuanto a la ejecución de las órdenes emitidas por el tribunal. Sin embargo, se debió prevenir al juez de instancia sobre tales pormenores, a los fines de lograr que se ampliase el término concedido para subsanar las escrituras.

▄▄▄ Hemos analizado cuidadosamente los autos ante nos, y encontramos que del informe del Comisionado Especial surge que circunstancias fuera del control del querellado contribuyeron a la falta de diligencia que se atribuye a éste en relación con el cumplimiento de las órdenes emitidas por el tribunal de instancia. Este caso es un ejemplo de los muchos y variados problemas que puede confrontar un abogado que

ejerce sus funciones notariales sin hacer una investigación adecuada de los antecedentes registrales de la propiedad que es objeto del contrato. *Chévere* v. *Cátala*, 115 D.P.R. 432 (1984). Su falta mayor ante sus clientes, pues tanto demandantes como demandados lo fueron cuando estuvo revestido de sus funciones notariales, fue la de no ilustrarse adecuadamente sobre el negocio jurídico en que estaba interviniendo. "El abogado representa los intereses de un cliente. El notario no representa a cliente alguno. Representa la fe pública." *In re Lavastida et al.*, 109 D.P.R. 45, 64, 86 (1979). (Juez Irizarry Yunqué, concurrente.) En sus funciones notariales *tenía* la obligación de orientarse y orientar a sus clientes sobre los problemas que surgirían al emitirse escrituras de compraventa sobre predios de terrenos que aún no habían sido segregados legalmente de la finca mayor, pues faltaba el permiso requerido por A.R.P.E.

En *In re Meléndez Pérez*, 104 D.P.R. 770, 775-776 (1976), manifestamos lo siguiente al referirnos al abogado que ejercere funciones notariales:

> . . . En su deber de ilustrar, y dar consejo legal a las partes contratantes, no hay guardarraya que separe al notario del abogado. . . . La fe pública notarial tiene como base la voluntad ilustrada de los contratantes; no puede ser fruto de la ignorancia y la obscuridad. El notario, principal instrumento de la fe pública, tiene la indeclinable obligación de propiciar y cerciorarse de este estado de conciencia informada supliendo las explicaciones, aclaraciones y advertencias en todo caso en que hagan falta para lograr el consentimiento enterado de los otorgantes al acto notarial. . . . El notario que falla a la sociedad y a los que ante él comparecen en este fundamental aspecto de aclaración e ilustración será el coautor de un consentimiento enfermo e ineficaz en derecho y habrá traicionado la fe de la que es principal guardador.

Por otro lado, aun cuando el querellado no fue parte demandada en el caso Civil Núm. 80-2987 (*Sociedad de Ga-*

*nanciales c/p Santos Rivera y Asunción Rivera Encarnación*
v. *Primitiva Tapia Molina y María Mercedes Tapia*), éste
tuvo pleno conocimiento de que sus actuaciones como notario
al emitir las escrituras 3 y 13 del 3 de abril y 20 de julio de
1978 respectivamente, al no poderse inscribir ambas escrituras en el Registro de la Propiedad, (²) eran la causa fundamental del litigio.

> El abogado en el desempeño de su gestión notarial está
> obligado a cumplir con lo dispuesto en la ley, en los Cánones
> de Ética o en el contrato con las partes. La inobservancia de
> esos deberes lo expone no sólo a una acción en daños por los
> perjuicios causados, sino a la jurisdicción correctiva y disciplinaria por parte de este foro judicial. *In re Cruz Tollinche,*
> 114 D.P.R. 205, 207 (1983).

■ Surge claramente del informe del Comisionado Especial que el querellado, al tratar de resolver el problema existente, realizó múltiples gestiones. Notamos, además, que fue
necesario coordinar con personas y realizar esfuerzos para
lograr su propósito. Eso le requirió otorgar otras escrituras
para salvaguardar su gestión notarial original. Como funcionario del Tribunal y dentro de sus deberes para con los tribunales, tenía la obligación de informar al tribunal de instancia las diferentes actividades que estaba realizando. (³) No

---

(²) El abogado de la parte demandante, Lic. Juan Francisco Arroyo
Elicier envió al querellado, por correo certificado, una copia de la sentencia
del caso y, posteriormente, en la vista celebrada en enero de 1984, el Lic.
Edgardo G. Raya estuvo presente.

(³) "La buena marcha del proceso judicial del país es responsabilidad
ineludible de todo miembro de la profesión legal. Le corresponde a todo
abogado procurar que prevalezca siempre en los tribunales un ambiente de
decoro y solemnidad laborando por mejorar la calidad de la justicia que en
éstos se imparte. *Para lograr el más adecuado desenvolvimiento y desarrollo del proceso judicial, el miembro de la profesión jurídica debe realizar
todas las gestiones propias y legales que estén a su alcance,* observando especialmente los cánones siguientes, que señalan algunos deberes particulares que surgen de este criterio general." (Énfasis nuestro.) Cánones de
Ética Profesional, *Deberes del Abogado para con los Tribunales: Criterio
General,* 4 L.P.R.A. Ap. IX.

podía cruzarse de brazos ante los reclamos de que era objeto. Su conducta no fue diligente y en este sentido merece nuestro rechazo. Los abogados tienen el deber de evitar pleitos innecesarios.

Incumbe, en suma, al notario no sólo cuidar de la aplicación correcta de la ley, sino velar por la realización, lo más plena que sea posible, de la justicia, haciendo que las convenciones y negocios sean expresión de la moral más rígida y del Derecho más justo, y evitando se deslice en ellos cualquier fraude de ley o cualquier abuso de Derecho. J. Castán Tobeñas, *Función notarial y elaboración notarial del Derecho,* Madrid, Ed. Reus, 1946, pág. 167; *In re Lavastida et al.,* supra, pág. 79 (Juez Irizarry Yunqué, concurrente).

El querellado no ha actuado con la corrección y diligencia que se requiere a todo abogado notario. A pesar de las faltas incurridas por el Lic. Edgardo G. Raya, debido a que del expediente ante nos surgen no sólo las múltiples gestiones realizadas por éste, sino que las escrituras ya fueron debidamente inscritas en el Registro de la Propiedad, y a que no observamos en las actuaciones del licenciado Raya propósito alguno de favorecer a alguno de los otorgantes, ni de defraudar o lucrarse, *nos limitamos en esta ocasión a amonestarlo y apercibirle que de recurrir en este tipo de conducta en el futuro seremos más severos.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Negrón García disiente sin opinión escrita por entender que se debería suspender del ejercicio del notariado al licenciado Raya por un término definido. El Juez Asociado Señor Ortiz disiente sin opinión escrita por entender que la conducta del abogado amerita una suspensión del ejercicio de la abogacía por un año.