Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re:<br><br><br><br>Miguel Hernández Vázquez | 2011 TSPR 9<br><br>180 DPR _____ |

Número del Caso: CP-2006-3

Fecha: 30 de diciembre de 2010

Oficina del Procurador General:

       Lcda. Carmen A. Riera Cintrón
       Procuradora General Auxiliar

       Lcda. Minnie H. Rodríguez López
       Procuradora General Auxiliar

Abogado del Peticionario:

       Lcdo. Héctor L. Torres Vilá

Materia: Conducta Profesional — La suspensión será efectiva el 24 de enero de 2011 fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Miguel Hernández Vázquez          CP-2006-3        Conducta
                                                   Profesional

PER CURIAM

En San Juan, Puerto Rico, a 30 de diciembre de 2010.

Nos corresponde atender una querella contra un abogado-notario a quien se le imputa haber incurrido en violaciones a la Sección 17 de la anterior Ley Notarial, equivalente al Artículo 15 de la actual Ley Notarial, 4 L.P.R.A. sec. 2033, y los Cánones 12, 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Por entender que las actuaciones del querellado se apartaron de las normas éticas que rigen el ejercicio de la profesión e incurrió en violación de la fe pública notarial, ordenamos la suspensión inmediata e indefinida del ejercicio de la abogacía y de la notaría.

I.

El Lcdo. Miguel Hernández Vázquez (el querellado), fue admitido al ejercicio de la abogacía y el notariado, los días 1 de noviembre de 1978 y 10 de noviembre de 1978, respectivamente. Éste intervino como abogado y como notario en las reclamaciones hereditarias habidas entre los herederos del matrimonio Castro-Feliú, bisabuelos de la señora Carmen M. Sagardía Miranda, la quejosa. El querellado, además, se convirtió en comunero de un terreno que originalmente perteneció a los bisabuelos de la quejosa, y es el objeto de disputa entre el querellado y la quejosa. A continuación, exponemos un resumen de los hechos que motivaron la interposición de la presente querella.

A.

Según surge del expediente, el 10 de junio de 1980, el querellado, actuando como notario, legitimó la firma de Don Saturnino Sagardía Castro,[1] padre de la quejosa, relacionado a un compromiso que éste hizo para remover una casa enclavada en el terreno en controversia, "tan pronto se divida o se haga la partición correspondiente".[2] Aproximadamente un año después, el 22 de mayo de 1981, el querellado presentó ante el Tribunal de Primera Instancia una petición sobre declaratoria de herederos para que

---

[1] También conocido como Lino Sagardía Castro.

[2] Dicho affidávit #488 no se encuentra en el expediente sino una certificación del asiento practicado en el Registro de Testimonios del querellado.

declarasen como únicos herederos de la señora María Francisca Castro Feliú[3] a María Mercedes[4] y Saturnino, ambos de apellido Sagardía Castro.[5] El peticionario de la declaratoria de herederos fue Don Daniel Castro Ortiz quien no era heredero de la causante, sino su sobrino, y quien tenía interés en que se hiciera la división de la comunidad hereditaria. Consecuentemente, dicho tribunal decretó como únicos y universales herederos de la señora María Francisca Castro Feliú, a la señora y el señor Sagardía Castro.

Así las cosas, el 3 de mayo de 1982, el querellado –en representación de las Sucesiones de Daniel y Merced, ambos de apellidos Castro Feliú– presentó una demanda sobre "División de comunidad de bienes hereditarios" contra la Sucesión de la señora María Francisca Castro Feliú para dividir un terreno que tenía una cabida de 4,060.8178 metros cuadrados.[6] El 14 de febrero de 1983, las partes decidieron llegar a un acuerdo[7] que fue acogido por el tribunal de instancia mediante sentencia dictada el 22 de febrero de 1983. En dicha estipulación, se les adjudicó a

---

[3] También conocida como Venancia Castro Feliú.

[4] También conocido como Lino Sagardía Castro.

[5] María Mercedes y Saturnino, ambos de apellido Sagardía Castro, son la tía y el padre de la quejosa, respectivamente.

[6] Los demandantes alegaban que los demandados estaban poseyendo el terreno en controversia en concepto de herederos, y que así lo hizo constar el señor Saturnino Sagardía Castro en el documento público autorizado por el querellado. Por su parte, los demandados alegaron que su posesión era pacífica, pública y en concepto de dueño por más de 60 años, y que el referido documento público fue firmado por el señor Saturnino Sagardía Castro por invitación del querellado, sin saber lo que firmaba.

[7] El acuerdo fue firmado por los demandados y su abogado y por el querellado en representación de los demandantes.

los demandados un predio de terreno de 1,011.9642 metros cuadrados – sin especificación de colindancias – y la casa de vivienda edificada en el solar, que estaba siendo habitada por la señora y el señor Sagardía Castro. Asimismo, el tribunal de instancia le ordenó a la parte demandante a gestionar con la Administración de Reglamentos y Permisos (A.R.Pe.) la segregación del predio de terreno adjudicado a los demandados y que se otorgara la escritura correspondiente.  Según surge del expediente, esto último no ocurrió.

No obstante, el 17 de septiembre de 1983, el querellado autorizó la escritura número 20 sobre "Segregación, partición y adjudicación" a la que comparecieron los herederos de las Sucesiones del señor Daniel y la señora Merced, ambos de apellido Castro Feliú. En la referida escritura se procedió a "segregar y adjudicar" entre ellos el remanente del terreno sobre el que el tribunal de instancia guardó silencio en la sentencia.[8] De tal escritura tampoco surge que la A.R.Pe. haya aprobado los permisos para las referidas segregaciones.

Ese mismo día, el querellado compareció junto a su esposa, la señora Carmen Ramírez Muñiz, como parte compradora de una fracción del terreno –con especificación de colindancia– que se acababa de "segregar y adjudicar"

---

[8] El terreno se dividió en cuatro predios. Dos de ellos con cabida de 1,102.6754 m/c y 1,102.1187 m/c, respectivamente.  Otros dos, con cabida de 660.3392 m/c y 60.9133 m/c, respectivamente, para uso público.

mediante la referida escritura número 20, autorizada por el propio querellado.[9] El 31 de octubre de 1987, el querellado y su esposa, vendieron el predio adquirido mediante la escritura número 76.[10] Cerca de 6 años más tarde, el querellado y su esposa, compraron de la señora Fundadora Castro Caraballo[11] la participación que, al morir su padre, el señor Prudencio del Carmen Castro y Morales, adquirió de la Sucesión del señor Daniel Castro Feliú. Dicha participación provino de la "segregación y adjudicación" que se hizo en la escritura número 20, autorizada por el querellado.

Así las cosas, el 26 de septiembre de 1994, el querellado presentó ante el tribunal de instancia una demanda sobre "Interdicto posesorio"[12] contra la señora Carmen Sagardía (la quejosa), el señor Francisco Andrew (esposo de la quejosa), el señor Saturnino Sagardía Castro (padre de la quejosa) y la señora María Mercedes Sagardía Castro (tía de la quejosa), en la que alegó que éstos no le permitían pasar a su propiedad. El 14 de julio de 1995, el querellado presentó una "Moción de sentencia sumaria" a lo que los demandados se opusieron. Por su parte, el Tribunal

---

[9] La escritura número 76 sobre "Compraventa" fue autorizada por el notario Raúl Aquino Figueroa, el 17 de septiembre de 1983.

[10] A través de la escritura número 111 sobre "Compraventa", autorizada por el notario Nelson Bassatt, el querellado vendió a los esposos, señor Santos Martín Lamberty y señora Nélida Solares Rivera.

[11] La señora Fundadora Castro Caraballo fue clienta del querellado en el caso sobre "División de comunidad de bienes" contra la Sucesión de la señora María Francisca Castro Feliú.

[12] El querellado solicitó el desalojo de los demandados y la destrucción o eliminación de cualquier edificación u objeto dentro de la propiedad.

de Primera Instancia declaró no ha lugar la "Moción de sentencia sumaria" por entender que había controversia acerca de la procedencia del terreno en disputa, y desestimó el recurso por falta de parte indispensable, debido a que no comparecieron junto al querellado el resto de los miembros de la comunidad de bienes. Inconforme, el querellado acudió al Tribunal de Apelaciones, quien revocó al tribunal de instancia respecto a la desestimación del recurso, pero no en cuanto a la decisión de declarar no ha lugar la sentencia sumaria.

Aun luego de la determinación del Tribunal de Apelaciones, quien revocó la determinación del tribunal de instancia de desestimar el recurso por falta de parte indispensable, el 24 de diciembre de 1997, el querellado presentó una "Moción solicitando desistimiento sin perjuicio" porque entendió que traer a todas las partes indispensables al pleito podía provocar el archivo de la acción bajo la Regla 39.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.[13] Además, señaló que la parte demandada había aceptado comprar su participación así como la participación del resto de los miembros de la comunidad de bienes. El 8 de enero de 1998, el tribunal de instancia desestimó la demanda, sin perjuicio, mediante sentencia. Sin embargo, contrario a lo que el querellado le explicó al Tribunal de Primera Instancia como fundamento para su

---

[13] La Regla 39.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III a la que se hace referencia en este caso fue derogada mediante la adopción por este Tribunal de las nuevas Reglas de Procedimiento Civil de 2009, el 4 de septiembre de 2009. *In re*: Aprobación de las Reglas de Procedimiento Civil de Puerto Rico, 2009 T.S.P.R. 143; 176 D.P.R. __.

desistimiento, el 23 de febrero de 2000, el querellado le envió a la quejosa una carta[14] en la que le informó que desistió de la demanda "en consideración a su difunto padre: Saturnino Sagardía", que no obstante, estaba dispuesto a llegar a las últimas consecuencias jurídicas, y la invitó a comprar la participación de éste para así dar por terminado el asunto.

### B.

El 26 de marzo de 2002, la señora Sagardía Miranda presentó una queja ante este Tribunal en la que alegó que el querellado cometió faltas éticas en un caso de partición de herencia de una sucesión, debido a que siendo representante legal de dicha sucesión, demandó a los miembros de ésta, compró y vendió terrenos pertenecientes a la sucesión sin los permisos de las agencias gubernamentales pertinentes, y utilizaba a otros abogados-notarios para que autorizaran transacciones ilegales.[15]  El

---

[14] Surge del expediente que la carta con fecha del 23 de febrero de 2000 lee como sigue: "Estimada señora Sagardía: Actualmente usted está ejerciendo posesión de un terreno donde yo tengo una participación económica.  En el pasado llevamos una acción la cual desistimos sin perjuicio en consideración a su difunto padre; Saturnino Sagardía. Sinembargo [*sic*] en estos momentos estamos preparados para llevar el caso a las últimas consecuencias jurídicas.  Esto no sería necesario si usted está dispuesta a comprarnos nuestra participación en dicho terreno, por lo que la invito a que nos visite acompañada si así usted lo prefiere o con grabadora para que grabe nuestra conversación el día y hora que usted entienda conveniente, para lo que le pido que nos llame al [###-####] para concertar la cita. Cordialmente, Lcdo. Miguel Hernández Vázquez".

[15] El 14 de junio de 2002, el Lcdo. Miguel Hernández Vázquez, el querellado, se limitó a presentar como contestación a la queja de la señora Carmen M. Sagardía Miranda, la quejosa, una moción en la que solicitó que este Tribunal admitiera como su contestación, una copia de la que había presentado ante el Colegio de Abogados para refutar otras querellas que le había radicado la quejosa, por los mismos hechos, y que habían sido archivadas.  No obstante, el querellado no abundó en las alegaciones relacionadas con las imputaciones que hiciere la quejosa en cuanto a "las transacciones ilegales" y la utilización de

13 de julio de 2002, la quejosa reafirmó lo antes expuesto mediante comunicación dirigida a este Foro en la cual indicó que el querellado no era dueño de la finca y que éste había adquirido el terreno "violando los derechos de herencia y vendiendo a parientes de él". También, nos informó que el querellado le había enviado una carta de amenaza para intimidarla.[16] Del mismo modo, el 12 de noviembre de 2002, la quejosa presentó un tercer escrito en el cual alegó que el abogado querellado había ido a su casa con una cámara y un objeto punzante en el bolsillo, que había proferido amenazas, indicando que él era el dueño de la propiedad. Además, solicitó que fuese investigada la obra notarial del querellado.

Posteriormente, el expediente sobre la queja fue referido a la Oficina de Inspección de Notarías (ODIN), para que hiciera la investigación e informe conforme a la Regla 14(d) del Reglamento de este Tribunal.[17] El 14 de octubre de 2003, ODIN presentó el informe requerido, en el que concluyó que el querellado no respondió a las exigencias ético-notariales dictadas por este Tribunal dado

_____

"otros notarios" para tales fines, la compra y venta a sus familiares de terrenos que no le pertenecían y sin la debida autorización de las agencias gubernamentales, el conflicto de intereses incurrido por él al demandar a una sucesión que fue su cliente, y las amenazas dirigidas a la quejosa. Esto, a pesar de que este Foro le concedió una prórroga de 30 días para contestar la queja presentada en su contra.

[16] Véase, n. 11, *supra*.

[17] "Cuando el(la) abogado(a) o el(la) Notario(a) hayan presentado su contestación, o haya transcurrido el término concedido para contestar, el(la) Secretario(a) remitirá la queja y la contestación, o la queja y una expresión al efecto de que no ha sido contestado, según fuese el caso, al(la) Director(a) de la Oficina de Inspección de Notaría, respectivamente, para que éstos(as), dentro del término de treinta (30) días, se expresen sobre las mismas y hagan la recomendación que estimen pertinente". 4 L.P.R.A. Ap. XXI-A, R. 14(d).

a sus intervenciones como abogado y notario en un mismo asunto. Por consiguiente, el 7 de mayo de 2004, este Foro dictó una Resolución en la que refirió al Procurador General este asunto para investigación y presentación del informe correspondiente. Por su parte, el 8 de septiembre de 2004, el Procurador General presentó el informe sobre la queja objeto del caso de epígrafe en cumplimiento con la Regla 14(d), *supra*. En dicho informe, el Procurador General llamó la atención a posibles violaciones a los Cánones del Código de Ética Profesional y la anterior Ley Notarial de Puerto Rico de 1956.

El 4 de noviembre de 2005, examinada la queja presentada por la quejosa, el Informe del Procurado General y la contestación del querellado, le ordenamos al Procurador General que sometiera las querellas correspondientes.

C.

Por todo lo anterior, y en cumplimiento con la orden de este Tribunal, el 26 de enero de 2006, el Procurador General [18] presentó una querella disciplinaria contra el Lcdo. Hernández Vázquez en la que le imputó 5 cargos.

En el **Cargo I**, el Procurador General le imputó al querellado haber violado el requisito de la dación de fe pública [notarial] establecido en la [Sección] 17 de la anterior Ley Notarial, equivalente al Artículo 15 de la actual Ley Notarial, *supra*. Esto debido a que el

---

[18] Por conducto de la Procuradora General Auxiliar.

querellado autorizó la escritura número 20 sobre "Segregación, partición y adjudicación", que tenía un negocio jurídico inexistente por disposición de ley, por no haberse obtenido la aprobación de la A.R.Pe. para la segregación de los terrenos mencionados en dicho documento público.

En lo que respecta al **Cargo II**, el Procurador le imputó al querellado haber violado los Cánones 12 y 38 del Código de Ética Profesional por haber actuado el querellado como abogado y notario en un mismo asunto, y fungir como comprador y vendedor de terrenos de la Sucesión que fue su cliente, según resuelto en *In re*: Rosario Maisonet, 142 D.P.R. 89 (1996).

En el **Cargo III**, se le atribuyó al querellado haber violado el Canon 12 del Código de Ética Profesional respecto al deber del abogado de ser conciso y exacto en el trámite y presentación de las causas por cuanto, luego de presentar el interdicto posesorio contra la quejosa y otros, sin la comparecencia del resto de los comuneros, solicitó una sentencia sumaria cuando conocía que existían controversias en cuanto a la procedencia del terreno que el querellado alegó tener interés propietario.

En cuanto al **Cargo IV**, el Procurador le imputó al querellado haber incurrido en violación de la Regla 9 de Procedimiento Civil, 32 L.P.R.A. AP. III,[19] y el Canon 35

---

[19] La Regla 9 de Procedimiento Civil, 32 L.P.R.A. Ap. III, a la que se hace referencia en este caso fue derogada mediante la adopción por este Tribunal de las nuevas Reglas de Procedimiento Civil de 2009, el 4 de septiembre de 2009. *In re*: Aprobación de las Reglas de Procedimiento Civil de Puerto Rico, 2009 T.S.P.R. 143; 176 D.P.R. __. Esta Regla, a

del Código de Ética Profesional.  Esto, porque en el caso de interdicto posesorio antes mencionado, el querellado indicó que desistía de su reclamación habida cuenta que la parte demandada había aceptado comprar su participación y la de los demás herederos, información a base de la cual el tribunal de instancia desestimó la acción sin perjuicio. Sin embargo, mediante carta de 23 de febrero de 2000, dirigida a la quejosa suscrita por el propio abogado querellado, éste indicó que había desistido de la demanda por consideración al padre de la quejosa, pero que estaba preparado para llevar el caso a las últimas consecuencias [jurídicas], lo cual no sería necesario si ella (refiriéndose a la quejosa) estuviera dispuesta a comprar la participación de él en el terreno.

En el **Cargo V**, [20] se le imputó al querellado haber violado el Canon 38 del Código de Ética Profesional pues el patrón de persecución que mantuvo el querellado hacia la quejosa resultó en dos órdenes de protección por acecho en contra del querellado, situaciones que atentaron contra la dignidad de la profesión de la abogacía.

Así las cosas, el 30 de enero de 2006, le ordenamos al querellado a contestar la querella presentada por el Procurador General en un término de 15 días a partir de la

---

su vez, fue enmendada por la Ley Núm. 220 de 29 de diciembre de 2009 y la Ley Núm. 98 de 26 de julio de 2010.

[20] Según surge de la querella sometida por el Procurador General, en dichas órdenes, se le requiere al abogado querellado abstenerse de acercarse o entrar a la residencia de la quejosa, a la escuela a la que ésta asiste y sus alrededores y el lugar de empleo y sus alrededores.

notificación de la Resolución.[21]  Debido a que el querellado

no contestó, el 29 de septiembre de 2006, le concedimos un

término final de 15 días a contar desde la notificación de

la Resolución[22] para contestar la referida querella, bajo

apercibimiento de que su incumplimiento nos llevaría a

continuar los procedimientos sin su comparecencia.  El 19

de octubre de 2006, el querellado presentó tardíamente la

"Contestación al Informe", no a la querella.

El 31 de enero de 2007, nombramos a la Lcda. Ygrí

Rivera de Martínez como Comisionada Especial (Comisionada)

conforme a la Regla 14 (h) del Reglamento de este

Tribunal.[23]  Por su parte, el 6 de junio de 2007, la

Comisionada le concedió tiempo adicional al querellado para

que finalmente contestara la querella presentada en su

contra.  El 25 de junio de 2007, el querellado presentó su

contestación a la querella en la que rechazó las

conclusiones del Procurador General.  El 14 de octubre

de 2009, la Comisionada concluyó su Informe en el cual

afirmó que todos los cargos presentados por el Procurado

General fueron probados.  Conjuntamente, sugirió que

tomásemos en consideración –como atenuante– que el

querellado se mostró muy afectado por la situación, y

expresó dolor y arrepentimiento.

---

[21] La Resolución se notificó el 18 de mayo de 2006.

[22] La Resolución se notificó el 2 de octubre de 2006.

[23] "Se celebrará una vista para recibir la prueba sobre la querella.  El Tribunal podrá ordenar que se celebre ante sí o, en el uso de su discreción podrá nombrar un(a) Comisionado(a) Especial para que reciba la prueba y rinda un informe con sus determinaciones de hecho". 4 L.P.R.A. Ap. XXI-A, R. 14(h).

Examinado dicho Informe y los "Comentarios, objeciones y recomendaciones al Informe de la Comisionada Especial" que presentó el querellado, el 24 de febrero de 2010, procedemos a resolver el caso de epígrafe.

II.

A.

La entonces vigente Ley Notarial de Puerto Rico, Ley Núm. 99 de 27 de junio de 1956, 4 L.P.R.A. sec. 1001 *et seq.*[24] establece en su Sección 17,[25] varios requisitos de redacción y contenido para las escrituras públicas así como lo relacionado a la expresión de dación de fe notarial. En cuanto a esto último, la citada Sección 17, dispone lo siguiente.

> No será preciso que el notario exprese que da fe en cada cláusula escrituraria de la estipulación que contenga, ni de las condiciones o circunstancias legales de las personas o casos a que se refiera, bastará que consigne una vez al final del documento, que certificará de todo lo contenido en el mismo, para que tal expresión se entienda aplicada a todas las palabras, estipulaciones, manifestaciones y condiciones reales o personales contenidas en el instrumento con arreglo a las leyes.

---

[24] Esta Ley fue derogada mediante la Ley Núm. 75 de 2 de julio de 1987, conocida como la Ley Notarial de Puerto Rico de 1987, 4 L.P.R.A. sec. 2001 *et seq*. Sin embargo, la escritura a la que se hace referencia en el **Cargo I** se autorizó durante la vigencia de la anterior Ley Notarial de 1956.

[25] La Sección 17 de la anterior Ley Notarial es análoga al Artículo 15 de la Ley Notarial vigente, 4 L.P.R.A. sec. 2033, respecto a varios requisitos de redacción y contenido para las escrituras públicas. *In re*: Martínez Ramírez, 142 D.P.R. 329 (1997), en la nota al calce n. 5. No obstante, en lo que respecta a la expresión de dación de fe pública notarial, el equivalente a la mencionada Sección 17, es el Artículo 26 de la actual Ley Notarial, 4 L.P.R.A. sec. 2044.

Al interpretar la mencionada Sección 17, este Tribunal explicó que cuando un notario autoriza un documento, da fe pública y asegura que ese documento cumple con todas las formalidades de ley -formal y sustantivamente- que el documento es legal y verdadero, y que se trata de una transacción válida y legítima. [26] Asimismo, hemos manifestado que en Puerto Rico, el notario es un profesional del Derecho que ejerce una función pública de dar fe y autenticidad de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, conforme a las leyes.[27] Así, el notario puertorriqueño representa la fe pública y no a un cliente en particular.[28]

En *In re*: Meléndez Pérez, 104 D.P.R. 770 (1976), manifestamos que la función del notario trasciende el acto externo de legalización de unas firmas. Igualmente, expresamos que la fe pública notarial tiene como base la voluntad ilustrada de los contratantes; no puede ser fruto de la ignorancia y la obscuridad.[29] Por esto, siendo el notario el principal instrumento de la fe pública, y conocedor del Derecho y las leyes, tiene la obligación de propiciar y cerciorarse de ese estado de conciencia informada supliendo las explicaciones, aclaraciones y advertencias en todo caso en que hagan falta para lograr el

---

[26] *In re*: Feliciano Ruiz, 117 D.P.R. 269 (1986).

[27] Art. 2, Ley Notarial de Puerto Rico de 1987 (4 L.P.R.A. sec. 2002).

[28] *In re*: Raya, 117 D.P.R. 797, (1986), *In re*: Lavastida, 109 D.P.R. 45 (1979).

[29] *In re*: Meléndez Pérez, 104 D.P.R. 770 (1976).

consentimiento enterado de los otorgantes al acto notarial.[30]

En fin, hemos pronunciado que el notario que falla a la sociedad y a los que ante él comparecen en este fundamental aspecto de aclaración e ilustración será el coautor de un consentimiento enfermo e ineficaz en derecho y habrá traicionado la fe de la que es principal guardador.[31]

B.

De otra parte, el Código de Ética Profesional contiene los principios éticos que rigen la profesión de la abogacía en Puerto Rico.[32] En particular, el Canon 12 del Código de Ética Profesional establece que es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos ser puntual con su asistencia y conciso y exacto en el trámite y presentación de las causas. Dispone, además, que los abogados deben asegurarse de no causar indebidas dilaciones en la tramitación y solución de las causas.[33] En *In re*: Rosario Maisonet, 142 D.P.R. 89 (1996), expresamos que viola este canon el abogado que mediante su conducta ocasione dilaciones y confusiones innecesarias. También, en *In re*: Arroyo Rivera, 148 D.P.R. 354, 358 (1999), reiteramos que los abogados tienen que responder

---

[30] Id.

[31] Id.

[32] *In re*: Vélez Barlucea, 152 D.P.R. 298, 311 (2000).

[33] 4 L.P.R.A. Ap. IX C. 12.

con premura a los requerimientos relacionados a quejas por conducta profesional pues hacer lo contrario conlleva graves sanciones disciplinarias.

Por otro lado, el Canon 35 del Código de Ética Profesional dispone, en parte, que la conducta de un abogado debe ser sincera y honrada, ante los tribunales, compañeros de profesión y sus representados, y éstos no deben utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa representación de hechos o el derecho.[34] Cónsono con lo anterior, hemos resuelto que la conducta de todo abogado ante los tribunales debe ser una caracterizada por sinceridad y honradez y, no actúa profesionalmente el abogado que no se ajusta a la sinceridad de los hechos al presentar las causas.[35]

Además, el Canon 38 del Código de Ética Profesional[36] establece en lo pertinente lo siguiente.

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta impropia. (…)
>
> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. (…)

---

[34] 4 L.P.R.A. Ap. IX C. 35. (Énfasis nuestro.)

[35] *In re*: Astacio Caraballo, 149 D.P.R. 790 (1999); *In re*: Peña Clos, 135 D.P.R. 590 (1994).

[36] 4 L.P.R.A. Ap. IX C. 38. (Énfasis nuestro.)

Al interpretar este canon hemos dicho que los abogados tienen la obligación ética de evitar, tanto en la realidad como en la apariencia, la impresión de conducta conflictiva e incorrecta.[37] Sea en la vida privada como en el desempeño de su función, un abogado debe conducirse en forma digna y honorable.[38] Es impropio que un abogado combine funciones de notario y abogado en un mismo asunto.[39] Así, podemos ejercer nuestra facultad de desaforo aunque las actuaciones del abogado hayan surgido por causas no relacionadas con el ejercicio de su profesión, pues basta que tales actuaciones afecten las condiciones morales del querellado.[40]

## C.

Por último, según dispone la Regla 14(h) del Reglamento de este Tribunal, *supra*, le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba y rendir un informe con sus conclusiones de Derecho. Al desempeñar una función similar al juzgador de instancia, el Comisionado Especial se encuentra en mejor posición para aquilatar la prueba testifical y adjudicar credibilidad, por lo que sus determinaciones fácticas merecen nuestra mayor deferencia.[41] Por lo tanto, aunque

---

[37] *In re*: Vélez Lugo, 164 D.P.R. 751 (2005).

[38] *In re*: Roldán Figueroa, 106 D.P.R. 4 (1977).

[39] *In re*: Vélez Lugo, 164 D.P.R. 751 (2005).

[40] Colegio de Abogados v. Barney, 109 D.P.R. 845, 848 (1980).

[41] *In re*: García Aguirre, res. el 2 de febrero de 2009, 2009 T.S.P.R. 21, 175 D.P.R. ___; *In re*: Morales Soto, 134 D.P.R. 1012, 1016 (1994).

este Tribunal no está obligado a aceptar el informe de la Comisionada Especial en un procedimiento disciplinario contra un abogado, y podemos adoptar, modificar o rechazar tal informe, de ordinario sostendremos sus determinaciones de hecho, salvo que se demuestre prejuicio, parcialidad o error manifiesto.[42]

III.

Con el beneficio de la normativa antes expuesta, pasamos a evaluar los hechos que motivan la presente querella para determinar si en efecto el querellado cometió los cargos imputados.

A.

En el Cargo I, se le imputó al querellado haber violado el requisito de la dación de fe pública notarial establecido en la Sección 17 de la anterior Ley Notarial de 1956, Ley Núm. 99 de 27 de junio de 1956, 4 L.P.R.A. sec. 1001 *et seq.* pues el querellado autorizó una escritura sobre "Segregación, partición y adjudicación", que tenía un negocio jurídico inexistente por disposición de ley. Esto, por no haberse obtenido la aprobación de la A.R.Pe. para la segregación de los terrenos mencionados en dicho documento público. Entendemos que el querellado violó la fe pública notarial en él depositada. Veamos.

_____

[42] *In re*: Pagán Pagán, 171 D.P.R. 975 (2007); *In re*: Morell Corrada, Alcover García, 158 D.P.R. 791 (2003); *In re*: Soto López, 135 D.P.R. 642, 646 (1994).

La Ley Orgánica de la Administración de Reglamentos y Permisos en su Artículo 22,[43] dispone en lo pertinente lo siguiente:

> <u>Carecerá de eficacia cualquier otorgamiento de escritura pública o contrato privado de lotificación si no ha sido sometida previamente dicha lotificación a la consideración de la Administración de Reglamentos y Permisos y no ha sido aprobada por ésta,</u> excepto en aquellos casos en que lo permita el Reglamento de Lotificación; Disponiéndose, que cualquier otorgamiento por medio de escritura pública o contrato privado en el cual se haga una lotificación sin haber sido previamente sometida y aprobada por la Administración de Reglamentos y Permisos, cuando ello fuere necesario, quedará ratificado y convalidado si, con posterioridad a dicho otorgamiento, la Administración de Reglamentos y Permisos aprobare, mediante resolución, la lotificación objeto de la escritura o contrato privado. (…)

Respecto a este particular, en <u>Rodríguez Padilla v. Cabassa</u>, 102 D.P.R. 419, 421 (1974), resolvimos que la interdicción que prescribe el artículo antes citado es absoluta. Es decir, una escritura de segregación no tiene eficacia si no ha sido aprobado previamente por [A.R.Pe.]. No obstante, se atenúa el rigor de la prohibición

---

[43] Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sec. 71u, (derogada). (Énfasis nuestro.)

A pesar de que dicha ley fue derogada mediante el Artículo 19.10 de la Ley para la Reforma del Proceso de Permisos, Ley Núm. 161 de 1 de diciembre de 2009, el Artículo 3 del Código Civil, 31 L.P.R.A. sec. 3, dispone que las leyes no tendrán efecto retroactivo a no ser que expresamente se disponga lo contrario. En armonía con lo anterior, el Artículo 18.1 de la Ley para la Reforma del Proceso de Permisos, *supra*, establece en lo pertinente que: "Cualquier acción civil radicada en relación con la estructuración de cualquiera de las leyes, o partes de éstas, derogadas o afectadas por esta Ley, y en trámite antes de la fecha de vigencia de esta Ley, no quedará afectada por ninguna de las derogaciones o modificaciones formuladas por esta Ley".

admitiendo la convalidación del contrato si con posterioridad [A.R.Pe.] aprobase la lotificación.

Como cuestión de umbral, no surge del expediente que A.R.Pe. haya aprobado la segregación contenida en la escritura número 20 sobre "Segregación, partición y adjudicación" que autorizó el querellado el 17 de septiembre de 1983. De hecho, en ninguna de las cláusulas de dicha escritura se hace referencia a los permisos de A.R.Pe. Además, resulta que han pasado más de 25 años desde que se autorizó la mencionada escritura y aún dichos comuneros, incluido el querellado, no han obtenido los permisos de segregación de A.R.Pe. Ciertamente, como custodio de la fe pública notarial, cuando el querellado autorizó la escritura en controversia, con su firma y sello notarial dio fe y aseguró que ese documento cumplía con todas las formalidades -tanto formales como sustantivas- y que ese documento era legal y verdadero. Sin embargo, dicha escritura carecía de los permisos de A.R.Pe. necesarios para el negocio jurídico que autorizó el querellado, entiéndase la segregación de un terreno.

Como conocedor del Derecho, el querellado debía estar al tanto de los requisitos que exigía la ley para los negocios jurídicos que autorizaba. Más aun, el querellado tenía que conocer el deber que le ocupa de cerciorarse que sus clientes fuesen conscientes de las posibles implicaciones a las que podían enfrentarse de no contar con los permisos requeridos por las agencias pertinentes. De acuerdo a los hechos particulares de este caso y según

surge de la antes mencionada escritura, el querellado falló en asesorar a sus clientes y en autorizar una escritura de segregación con arreglo a las leyes. Aun así, el querellado estampó su firma y sello al final de la escritura en representación de la dación de fe notarial en él depositada, la cual asegura que la autorización del documento se hizo con arreglo a las leyes.

En el Cargo II, se le imputó al querellado haber violado los Cánones 12 y 38 del Código de Ética Profesional, según resuelto en *In re*: Rosario Maisonet, 142 D.P.R. 89 (1996), por haber actuado como abogado y notario en un mismo asunto, y fungir como comprador y vendedor de terrenos de la Sucesión que fue su cliente. En síntesis, de los hechos antes expuestos surge claramente que el querellado intervino como abogado y como notario en reclamaciones habidas entre los herederos del matrimonio Castro-Feliú, bisabuelos de la quejosa en este caso. El querellado, además, se convirtió en comunero de un terreno que originalmente perteneció a los bisabuelos de la quejosa, y es el objeto de disputa entre el querellado y la quejosa. No siendo suficiente, el querellado demandó en varias ocasiones a miembros de la referida Sucesión, causando dilaciones y confusiones innecesarias en contravención al Canon 12 del Código de Ética Profesional. Todo lo anterior, constituyó además una grave falta al Canon 38 del Código de Ética Profesional, el cual prescribe que abogados tienen la obligación ética de evitar, tanto en

la realidad como en la apariencia, la impresión de conducta conflictiva e incorrecta.

Asimismo, en el Cargo III se le imputó al querellado la violación al Canon 12 del Código de Ética Profesional debido a que éste interpuso una demanda de interdicto posesorio y luego una solicitud de sentencia sumaria en contra de la quejosa con conocimiento de la frivolidad de sus planteamientos. Esto en contravención al mandato del citado Canon 12 respecto al deber del abogado en ser conciso y exacto en el trámite de sus causas. Igualmente, en el Cargo IV se le imputó al querellado haber faltado al Canon 35 y la Regla 9 de Procedimiento Civil de 1979,[44] pues en el caso de interdicto posesorio antes mencionado, el querellado indicó que desistía de su reclamación porque la quejosa había aceptado comprar su participación y la de los demás herederos, información a base de la cual el tribunal de instancia desestimó la acción sin perjuicio. Sin embargo, el querellado le envió una carta a la quejosa en la que indicó que había desistido de la demanda por consideración al padre de ella, pero que estaba preparado para llevar el caso a las últimas consecuencias [jurídicas], lo cual no sería necesario si ella (refiriéndose a la quejosa) estuviera dispuesta a comprar la participación de él en el terreno.

---

[44] La Regla 9 de Procedimiento Civil, 32 L.P.R.A. Ap. III, a la que se hace referencia en este caso fue derogada mediante la adopción por este Tribunal de las nuevas Reglas de Procedimiento Civil de 2009, el 4 de septiembre de 2009. *In re*: Aprobación de las Reglas de Procedimiento Civil de Puerto Rico, 2009 T.S.P.R. 143; 176 D.P.R. __. Esta Regla, a su vez, fue enmendada por la Ley Núm. 220 de 29 de diciembre de 2009 y la Ley Núm. 98 de 26 de julio de 2010.

Sin duda, la actuación del querellado a la que hacemos referencia constituye una violación al deber ético que impone el Canon 35 concerniente a la sinceridad y honradez que debe reflejar un abogado para con los tribunales, sus compañeros y la sociedad en general. Independientemente de cuál fuera la verdadera motivación del querellado para desistir de la demanda, lo cierto es que éste fue contradictorio con las razones que le expuso al Tribunal en comparación con la que le informó a la parte demandada. Al mismo tiempo, el querellado incumplió con la Regla 9 de las de Procedimiento Civil de 1979, *supra*, que indica que la firma de un abogado equivale a certificar que el abogado leyó el escrito, "que de acuerdo con su mejor conocimiento, información y creencia está bien fundado, y que no ha sido interpuesto para causar demora u opresión". Esto cuando firmó tanto la Moción de desistimiento como cuando firmó la carta dirigida a la quejosa, pues el querellado tenía conocimiento de que los fundamentos incluidos en ambos documentos no eran verdaderos. Además, el desistimiento de la acción a base de información falsa, seguido por el envío de la carta a la quejosa aparenta todas luces que tal actuación fue incurrida con el propósito de causar opresión a la quejosa.

En el Cargo V se le imputó al querellado haber infringido el Canon 38 del Código de Ética Profesional como consecuencia del patrón de persecución que mantuvo el querellado hacia la quejosa el cual resultó en dos órdenes de protección por acecho en contra del querellado.

Entendemos que las actuaciones del querellado para con la quejosa, a tal punto que resultaron en órdenes de protección por acecho, son del todo contrarias a lo que debe ser el comportamiento de un abogado, y atentaron contra la dignidad de la profesión de la abogacía. Hemos reiterado que tanto en la vida privada como en el desempeño de su función un abogado debe conducirse en forma digna y honorable. Además, debe esforzarse en exaltar el honor y dignidad de su profesión aunque eso conlleve sacrificios personales. Evidentemente, no se honra ni exalta la profesión de la abogacía incurriendo en conducta que motive solicitudes de órdenes de protección por acecho.

Finalmente, debemos señalar que además de las faltas éticas antes discutidas, el querellado desatendió en varias ocasiones las órdenes de este Tribunal a los efectos de contestar la querella presentada en su contra. Esto, en clara violación al Canon 12 del Código de Ética Profesional sobre el cual hemos expresado que los abogados tienen que responder con premura a los requerimientos relacionados a quejas por conducta profesional pues hacer lo contrario conlleva graves sanciones disciplinarias. Luego de haber analizado los hechos que motivaron la querella que atendemos hoy, somos de la opinión de que el Lcdo. Miguel Hernández Vázquez faltó a la fe pública notarial en él depositada y se apartó de los principios éticos que rigen la profesión de la abogacía, y que todo abogado debe observar celosamente.

IV.

Por los fundamentos antes expuestos ordenamos la suspensión inmediata e indefinida del Lcdo. Miguel Hernández Vázquez del ejercicio de la abogacía y de la notaría. El Alguacil de este Tribunal deberá incautar la obra y sello del licenciado Hernández Vázquez.

Se le impone el deber de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país.

Además, deberá certificarnos en treinta (30) días del cumplimiento de estos deberes.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Miguel Hernández Vázquez          CP-2006-3          Conducta
                                                      Profesional

SENTENCIA

En San Juan, Puerto Rico, a 30 de diciembre de 2010.

Por los fundamentos antes expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se ordena la suspensión inmediata e indefinida del Lcdo. Miguel Hernández Vázquez del ejercicio de la abogacía y de la notaría. El Alguacil de este Tribunal deberá incautar la obra y sello del licenciado Hernández Vázquez.

Se le impone el deber de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país.

Además, deberá certificarnos en treinta (30) días del cumplimiento de estos deberes.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo