

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>Sigfredo Fontánez Fontánez | 2011 TSPR 63<br><br>181 DPR _____ |

Número del Caso: CP        - 2008 - 25

Fecha: 31 de marzo de 2011

Abogado del Querellado:

Por derecho Propio

Oficina del Procurador General

Lcda. Minnie H. Rodríguez López
Procuradora General Auxiliar

Materia:      Conducta Profesional       -   La suspensión será efectiva el                26   de abril      de 2011 fecha en que se le notificó al abogado de su suspensió                        n inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un                        servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Sigfredo Fontánez Fontánez          CP-2008-25          Conducta
                                                        Profesional

PER CURIAM

San Juan, Puerto Rico, a 31 de marzo de 2011.

El día de hoy, debemos separar de la profesión a un abogado que, tras haber ejercido deficientemente el notariado, hizo caso omiso de nuestras órdenes para que subsanara las deficiencias en su obra notarial y, peor aún, practicó la notaría mientras estaba suspendido. Por las razones que se precisan a continuación, ordenamos la suspensión inmediata e indefinida del Lcdo. Sigfredo Fontánez Fontánez del ejercicio de la abogacía.

I.

El licenciado Fontánez Fontánez fue admitido al ejercicio de la abogacía y la notaría en el

1979.[1] El 13 de junio de 2003, fue suspendido del ejercicio de la profesión por desatender ciertos requerimientos del Procurador General y de este Tribunal. Como consecuencia, su obra notarial, incluido su sello notarial, fue incautada y entregada a la Oficina de Inspección de Notarías (O.D.I.N.) para el examen e informe correspondientes.

Varias semanas después, el 18 de julio de 2003, este Tribunal ordenó la reinstalación del licenciado Fontánez al ejercicio de la abogacía. Su reinstalación al notariado quedó en suspenso, a la espera de que la O.D.I.N. emitiera el informe correspondiente sobre la obra notarial incautada. Mientras tanto, su obra notarial, al igual que su sello, permaneció bajo la custodia de la O.D.I.N.

Al examinar la obra notarial del licenciado Fontánez para los años 1999 al 2003, los Inspectores de la O.D.I.N. descubrieron múltiples deficiencias de carácter grave, incluidas deficiencias arancelarias ascendentes a $15,378.50 en más del noventa por ciento de las escrituras.[2] Asimismo, la mayoría de la obra notarial incautada adolecía de nulidad por no tener las firmas de los otorgantes o

---

[1] El 20 de abril de 1979 y el 18 de junio de 1979, respectivamente.

[2] Entre las faltas de carácter grave señaladas por la O.D.I.N en la obra notarial del licenciado Fontánez, se encontraban: (1) falta de encuadernación de las escrituras; (2) omisión del sello, rúbrica y firma del notario; (3) omisión de las iniciales y firma de los otorgantes y testigos; (4) falta de numeración interna de cada instrumento; (5) folios en blanco con solamente las firmas de los otorgantes; (6) exceso de espacios en blanco; (7) falta de nota de saca, y (8) no dar fe de la unidad del acto cuando se requería.

testigos instrumentales, así como la firma, rúbrica, signo y sello del notario, entre otras razones.[3]

La Directora de la O.D.I.N. hizo constar todas estas deficiencias en tres informes parciales, presentados ante nos entre octubre de 2003 y marzo de 2004. Tras revisar el primer informe parcial, este Tribunal emitió una Resolución el 30 de enero de 2004, mediante la cual le concedimos treinta días al licenciado Fontánez para que subsanara las deficiencias señaladas por la O.D.I.N. y mostrara causa por la cual, ante las numerosas deficiencias de carácter grave identificadas por la O.D.I.N., no debía ser separado de la profesión de abogado. El licenciado Fontánez nos solicitó entonces una prórroga de treinta días, la cual concedimos.[4]

Luego que la Directora de la O.D.I.N. presentara su tercer y último informe parcial sobre la obra notarial incautada, este Tribunal emitió una segunda Resolución, con fecha de 7 de junio de 2004, mediante la cual ordenamos al licenciado Fontánez que, dentro de un término de veinte días, subsanara las deficiencias arancelarias ascendentes a $15,378.50; informara qué gestiones había realizado para corregir las deficiencias señaladas por la O.D.I.N., y

---

[3]Por ejemplo, en el 2001, el licenciado Fontánez autorizó ochenta y cinco escrituras. De éstas, setenta y siete estaban afectadas de nulidad porque faltaba ya sea la firma de los otorgantes o la firma, rúbrica y sello del notario. En el 2002, autorizó noventa y nueve escrituras. De éstas, alrededor de setenta, incluido seis testamentos abiertos, estaban afectadas de nulidad por las faltas ya señaladas, así como por no dar fe de la unidad del acto en aquellos casos en que comparecieron testigos instrumentos.

[4]Resolución de 31 de marzo de 2004.

mostrara causa por la que no debía ser separado de la profesión. El abogado hizo caso omiso de nuestra orden. Emitimos entonces una tercera Resolución en la que le concedimos un término final de veinte días para cumplir con lo ordenado en la Resolución del 7 de junio de 2004.[5] El abogado compareció y nos solicitó otra prórroga de treinta días, la cual otorgamos.[6]

El 12 de enero de 2006, el licenciado Fontánez presentó una moción informativa en la que nos informó que se había reunido con el inspector de protocolos asignado a su caso con el fin de preparar un plan de trabajo para corregir las deficiencias señaladas. Indicó que ello debía poder lograrse en un término "de por lo menos seis meses como término máximo". Sin embargo, el 8 de mayo de 2006, la Directora de la O.D.I.N. presentó una moción informativa en la que señaló que el licenciado Fontánez aún no había corregido las deficiencias de su obra notarial. Destacó que los esfuerzos del inspector de protocolos, dirigidos a corregir las deficiencias, habían resultado infructuosos y que las únicas gestiones realizadas por el abogado habían sido encuadernar sus protocolos y adherir los sellos de Asistencia Legal a dos tomos de su Registro de Testimonios. Para esa fecha, la deuda por concepto de aranceles ascendía a $10,824.50.

---

[5]Resolución de 21 de octubre de 2005.

[6]Resolución de 18 de noviembre de 2005.

Examinado el escrito de la Directora de la O.D.I.N., concedimos al abogado un término final e improrrogable de sesenta días para que corrigiera las deficiencias en su obra notarial.[7] Al cabo de los sesenta días, el licenciado Fontánez presentó otra moción informativa en la que nos informó que se personó a la O.D.I.N. para adherir los sellos que faltaban, pero que no pudo hacerlo porque, según alega, no había personal en dicha oficina para supervisar la labor. En vista de lo anterior, otorgamos otro término final e improrrogable, esta vez de veinte días, para que corrigiera las deficiencias arancelarias.[8]

Según surge de una moción en cumplimiento de orden, con fecha de 14 de diciembre de 2006, presentada por la Directora de la O.D.I.N., el licenciado Fontánez corrigió las deficiencias arancelarias. Sin embargo, transcurridos más de tres años desde que su obra notarial fuera incautada, éste todavía no había corregido las otras deficiencias señaladas, incluida la falta de firmas e iniciales de los otorgantes en numerosas escrituras.

En vista de lo anterior, le concedimos un término de veinte días al licenciado Fontánez para que mostrara causa por la cual no debía ser disciplinado. Luego, tras examinar otra moción en cumplimiento de orden, en la que la Directora de la O.D.I.N. nos informó que el licenciado Fontánez aún no había subsanado las deficiencias en su obra

---

[7] Resolución de 9 de junio de 2006.

[8] Resolución de 6 de octubre de 2006.

notarial, concedimos al abogado un término adicional de veinte días para que mostrara causa por la cual no debía ser disciplinado.[9] Pasados los veinte días, el 27 de junio de 2007, el licenciado Fontánez presentó una moción informativa en la que expuso su plan de trabajo para subsanar las faltas restantes. Asimismo, mediante carta del 3 de agosto de 2007, informó a la O.D.I.N. que, para noviembre de ese año, planificaba tener completadas las actas notariales pertinentes.

Así las cosas, el 5 de noviembre de 2007, la Directora de O.D.I.N. presentó una solicitud de medidas urgentes en la que nos comunicó que el abogado continuaba ejerciendo la notaría a pesar de no tener autoridad para ello. Dicho escrito hacía referencia a una carta suscrita por el Archivero Notarial del Distrito de Caguas en la que éste revelaba que a sus manos habían llegado documentos notariales con la firma del licenciado Fontánez. Dichos documentos habían sido recibidos en el Departamento de la Vivienda del Municipio de Caguas. Asimismo, la Directora de la O.D.I.N. aludió a una conversación telefónica entre ella y el licenciado Fontánez, en la que éste reconoció haber suscrito varias declaraciones juradas, a pesar de estar suspendido del ejercicio de la notaría. Además, la funcionaria llamó nuestra atención al hecho de que el abogado todavía no había subsanado las deficiencias en su obra notarial.

---

[9]Resolución de 1 de junio de 2007.

En vista de lo anterior, el 11 de enero de 2008 ordenamos a la Procuradora General presentar la querella correspondiente contra el licenciado Fontánez. Conforme a ello, el 2 de octubre de 2008, la Oficina de la Procuradora General presentó una querella en la que se le imputaron al abogado tres cargos por violaciones a los siguientes cánones del Código de Ética Profesional, 4 L.P.R.A. Ap. IX: (1) el Canon 9, al incumplir con las órdenes y términos concedidos por este Tribunal para corregir las deficiencias en su obra notarial; (2) el Canon 12, al incurrir en una indebida, irrazonable, injustificada y excesiva tardanza en corregir su obra notarial, a pesar de los múltiples requerimientos y términos concedidos a tales fines por este Tribunal, y (3) el Canon 38, al incurrir en conducta impropia y no esforzarse al máximo de su capacidad en la exaltación del honor y la dignidad de la profesión legal. Además, se le imputó un cuarto cargo por violaciones a varias disposiciones de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2001 *et seq.*, en específico: el Art. 7 (sobre la práctica ilícita de la profesión notarial); el Art. 29 (sobre la subsanación de defectos por el notario) y los Arts. 16 y 29 (sobre la firma e iniciales en los documentos notariales).

El 10 de febrero de 2009, le ordenamos al licenciado Fontánez contestar la querella dentro de un término de quince días. El abogado solicitó entonces una prórroga de treinta días. Aunque su petición fue tardía, le concedimos

un término adicional de veinte días para contestar la querella. Posteriormente, le conferimos un término final de quince días. Por último, y a petición suya, le otorgamos un término final e improrrogable de diez días. Sin embargo, el licenciado Fontánez nunca contestó la querella en su contra.

El 28 de agosto de 2009, designamos al Hon. Hiram Sánchez Martínez, ex juez del Tribunal de Apelaciones, como Comisionado Especial para que, en presencia de las partes, recibiera prueba y nos rindiera un informe con sus determinaciones de hechos y las recomendaciones que estimara pertinentes. El Comisionado Especial señaló entonces una vista en su fondo para el 29 de septiembre de 2009. A petición del licenciado Fontánez, la vista fue reseñalada para el 30 de noviembre de 2009. A esa vista compareció la Lcda. Minnie H. Rodríguez López, en representación de la Oficina de la Procuradora General, pero no el querellado.

Según surge de la minuta de dicha vista, la Procuradora General expresó su intención de someter el caso con los documentos que constan en el expediente de la querella y los documentos suplementarios que constan en el expediente personal del licenciado Fontánez. El Comisionado Especial entendió que no había prueba suficiente en el expediente para establecer, como un hecho probado, que el licenciado Fontánez ejerció la notaría sin autoridad para ello. A petición de la Procuradora General, le concedió a

ésta un término adicional para conseguir la prueba necesaria. A tales efectos, señaló la continuación de la vista para el 26 de enero de 2010. Aunque el licenciado Fontánez fue declarado en rebeldía, éste fue notificado del nuevo señalamiento. Sin embargo, no compareció. En dicha vista, la Procuradora General presentó el testimonio de la Directora de la O.D.I.N. Luego, el 12 de febrero de 2010, la Procuradora presentó una moción con prueba documental adicional.

Así las cosas, el 5 de abril de 2010, el licenciado Fontánez presentó ante nos una moción con el fin de renunciar permanentemente a la práctica de la notaría. En dicho escrito, aceptó haber cometido varias imprudencias y ofreció excusas por "la dejadez, inapropiada [sic] y la actitud de ignorar los varios requerimientos" hechos por este Tribunal. En vista de que el Comisionado Especial ya había celebrado la vista en su fondo y que estábamos próximos a recibir su informe, proveímos no ha lugar a la moción de renuncia presentada por el abogado.

El 28 de octubre de 2010, el Comisionado Especial presentó su Informe, en el que concluyó que la Procuradora General probó todos los cargos imputados en la querella. Por consiguiente, recomendó la suspensión inmediata e indefinida del licenciado Fontánez del ejercicio de la abogacía. Además, recomendó que se refiera el caso al Secretario de Justicia para que éste determine si la conducta del abogado constituyó delito.

Con el beneficio del Informe presentado por el Comisionado Especial, procedemos a resolver.

II.

A.

Como se sabe, este Tribunal tiene el poder inherente para reglamentar la admisión a la profesión de abogado, así como para tomar acción disciplinaria contra el miembro de la profesión que viola las leyes y los Cánones de Ética Profesional. In re: Rodríguez Vázquez, res. el 16 de junio de 2009, 2009 T.S.P.R. 109; In re: Deynes Soto, 164 D.P.R. 327 (2005). Esta facultad disciplinaria, la cual es exclusiva de este Tribunal, se extiende a todo lo relativo al ejercicio de la profesión notarial en Puerto Rico. In re: Amundaray Rivera, 163 D.P.R. 251 (2004); In re: Madera Acosta, 144 D.P.R. 743, (1998); S. Torres Peralta, El Derecho Notarial Puertorriqueño, ed. especial, San Juan, Pubs. STP, 1995, págs. 2.2-2.3.

El Canon 9 del Código de Ética Profesional, supra, le impone a los miembros de la profesión legal el deber de observar para con los tribunales una conducta que se caracterice por el mayor respeto. In re: Grau Díaz, 154 D.P.R. 70, 75 (2001). Hemos dicho que "[l]a naturaleza de la función del abogado requiere de éste una escrupulosa atención y obediencia a las órdenes que emiten los tribunales". In re: Dávila Toro, res. 30 de agosto de 2010, 2010 T.S.P.R. 195. Desatender estas órdenes constituye una grave ofensa a la autoridad del tribunal en clara violación

al mandato expreso del Canon 9. In re: González Carrasquillo, 164 D.P.R. 813 (2005); In re: Grau Díaz, *supra*; In re: Otero Fernández, 145 D.P.R. 582 (1998).

Por su parte, el Canon 12 del Código de Ética Profesional, *supra*, consigna el deber de cada abogado de ejercer la máxima diligencia para con las partes, sus compañeros y el tribunal. Conforme a ello, el abogado debe evitar dilaciones innecesarias en el trámite y solución de los casos. In re: Flores Ayffán I, 170 D.P.R. 126, 129-130 (2007). Cabe recordar que "los abogados son funcionarios del tribunal y, como tales, están llamados a ayudarlos en su misión de hacer justicia rápida y económica". Neptune Packing Corp. v. The Wackenhut Corp., 120 D.P.R. 283 (1988).

A su vez, el Canon 38 del Código de Ética Profesional, *supra*, le exige a todo abogado conducirse en forma que exalte la dignidad y el honor de su profesión. Este deber responde a la confianza depositada en el abogado como miembro de la ilustre profesión legal. In re: Sepúlveda, Casiano, 155 D.P.R. 193 (2001). Reiteradamente, al interpretar el referido precepto, hemos expresado que cada abogado es un espejo en el cual se refleja la imagen de la profesión, por lo que debe actuar, tanto en su vida profesional como en su vida privada, con limpieza, lealtad y el más escrupuloso sentido de responsabilidad. In re: Currás Ortiz, res. el 31 de julio de 2008, 2008 T.S.P.R. 147; In re: Coll Pujols, 102 D.P.R. 313 (1974).

Por otro lado, es norma establecida que el criterio probatorio a utilizarse en procedimientos disciplinarios es aquel de prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas. In re: Caratini Alvarado, 153 D.P.R. 575 (2001). Dicho criterio requiere una carga probatoria más fuerte que la mera preponderancia de la prueba, toda vez que en estos procesos está en juego el título de un abogado y, por ende, su derecho a ganarse su sustento. Íd. Aunque el referido estándar de prueba no es susceptible de una definición precisa, la prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables. In re: Ruiz Rivera, res. el 28 de junio de 2006, 2006 T.S.P.R. 106; In re: Rodriguez Mercado, 165 D.P.R. 630 (2005).

Por último, según la Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba. Al desempeñar una función similar al juzgador de instancia, el Comisionado Especial está en mejor posición para aquilatar la prueba testifical y adjudicar credibilidad, por lo que sus determinaciones fácticas merecen nuestra mayor deferencia. In re: Acevedo Álvarez, res. el 20 de abril de 2010, 2010 T.S.P.R. 74; In re: Gordon Menéndez I, 171 D.P.R. 210 (2007); In re: Morales Soto, 134 D.P.R. 1012 (1994). Por lo tanto, aunque

este Tribunal no está obligado a aceptar el informe de un Comisionado Especial en un procedimiento disciplinario contra un abogado, y podemos adoptar, modificar o rechazar tal informe, de ordinario sostendremos las determinaciones de hecho de un Comisionado Especial salvo que se demuestre prejuicio, parcialidad o error manifiesto. In re: Pagán Pagán, res. 8 de agosto de 2007, 2007 T.S.P.R. 151; In re: Morell, Alcover, 158 D.P.R. 791 (2003); In re: Soto López, 135 D.P.R. 642 (1994).

B.

Por otra parte, como es sabido, la notaría es una función de cuidado que debe ser ejercida con suma diligencia y celo profesional. In re: Bringas Rechani, 128 D.P.R. 132, 134 (1991); In re: Alvarado Tizol, 122 D.P.R. 587 (1988); In re: Rodríguez Mena, 126 D.P.R. 205 (1990). Los notarios están obligados a cumplir estrictamente con lo dispuesto en la Ley Notarial de Puerto Rico, *supra*, y en los Cánones del Código de Ética Profesional, *supra*. In re: Bringas, *supra*, pág. 134. El incumplimiento con estas fuentes de obligaciones y deberes los expone a la acción disciplinaria correspondiente. *Íd.*; In re: Raya, 117 D.P.R. 797, 804 (1986); In re: Cruz Tollinche, 114 D.P.R. 205 (1983).

El Art. 7 de la Ley Notarial, 4 L.P.R.A. sec. 2011, establece los requisitos para poder ejercer el notariado en nuestra jurisdicción. En lo pertinente a este caso, dicho artículo dispone que "[s]ólo podrán practicar la profesión

notarial en el Estado Libre Asociado quienes estuvieren autorizados para ejercerla actualmente y los abogados que en el futuro fueren admitidos al ejercicio de la profesión, y que en lo sucesivo sean autorizados por el Tribunal Supremo de Puerto Rico para ejercer el notariado".

Por su parte, el Art. 29 de la Ley Notarial, 4 L.P.R.A. sec. 2047, establece la forma en que se corregirán los defectos que surjan en un instrumento publico y que sean percibidos luego de su autorización. En síntesis, dicho artículo dispone que los defectos de que adolezcan los documentos notariales ínter vivos podrán ser subsanados por los mismos otorgantes o por sus herederos o causahabientes por medio de una escritura pública en que se haga constar el defecto, su causa y la declaración que lo subsana. Hemos dicho que esta disposición toma en consideración la posibilidad de que se cometan errores al otorgar un instrumento público. In re: Rivera Vázquez, 155 D.P.R. 267, 280 (2001). Para preservar la verdad y la fe publica notarial, el notario debe seguir estrictamente este procedimiento para la corrección de defectos en los instrumentos públicos. Íd.

A su vez, el Art. 16 de la Ley Notarial, 4 L.P.R.A. sec. 2034, establece el requisito de la firma e iniciales en los instrumentos públicos. A tales efectos, dicho artículo dispone:

> Los otorgantes y los testigos firmarán la escritura y además estamparán las letras iniciales de su nombre y apellido o apellidos al margen de cada una

de las hojas del instrumento, las cuales rubricará y sellará el notario.

Sobre este particular, hemos dicho que la firma es un requisito fundamental en la escritura pública, demostrativo de que el otorgante aprueba el texto escrito que antecede la firma. In re: Nieves Nieves, 171 D.P.R. 843, 852 (2007); In re: González Maldonado, 152 D.P.R. 871 (2000). La omisión de la firma de uno o más de los otorgantes o testigos no sólo es una falta notarial grave y una violación a la fe pública, sino que además es causa de nulidad del instrumento público. In re: Vargas Cintrón, 153 D.P.R. 520 (2001).

A lo anterior se suma lo establecido en el Art. 28 de la Ley Notarial, 4 L.P.R.A. sec. 2046, que dispone:

> Los que suscriban un instrumento público en cualquier concepto, lo harán formando al final y estampando las iniciales de su nombre y apellido o apellidos al margen de todos los folios, en la forma que habitualmente empleen y el notario lo hará a continuación de los mismos, rubricándolo, signándolo y sellándolo.
>
> Si no hubiere testigos instrumentales, será innecesario que los comparecientes firmen el documento todos juntos en presencia del notario, sino que éste podrá recibir personalmente sus firmas en cualquier tiempo, dentro del mismo día natural del otorgamiento, con arreglo a lo expresado en la sec. 2042 de este título.

El notario tiene, pues, la responsabilidad de que, en el acto de otorgamiento, se observen todas las solemnidades requeridas y de que el documento cumpla con todos los requisitos exigidos por la Ley Notarial. Incumplir con

estas obligaciones podría conllevar serias sanciones disciplinarias.

Con estos preceptos en mente, atendamos la controversia ante nuestra consideración.

## III.

En el primer cargo en su contra, se le imputa al licenciado Fontánez haber violado el Canon 9 del Código de Ética Profesional, *supra*, al incumplir con las órdenes y los términos concedidos por este Tribunal para que corrigiera las deficiencias en su obra notarial. A su vez, en el segundo cargo, se le imputa haber infringido el Canon 12 del Código de Ética Profesional, *supra*, al incurrir en una indebida, irrazonable, injustificada y excesiva tardanza en corregir su obra notarial, a pesar de los múltiples requerimientos y términos concedidos a esos fines por este Tribunal. Entendemos que el licenciado Fontánez violó ambos cánones de ética profesional. Veamos.

Este Tribunal le ha concedido múltiples oportunidades al licenciado Fontánez para que subsane las deficiencias con carácter grave señalados en su obra notarial. A tales efectos, entre enero de 2004 y octubre de 2008, fecha en que se presentó la querella, este Tribunal emitió al menos seis Resoluciones ordenándole al querellado que subsanara las referidas deficiencias o mostrara causa por la que no debía ser suspendido del ejercicio de la abogacía por tal incumplimiento, o ambas cosas.

El licenciado Fontánez desatendió todas estas órdenes. Al día de hoy, su gestión se ha limitado a encuadernar ciertos protocolos y a subsanar las deficiencias arancelarias. El abogado tampoco cumplió con su deber de contestar la querella presentada contra él, aun cuando solicitó una prórroga para ello. Lo mismo hizo cuando el Comisionado Especial señaló una vista en su fondo: solicitó una prórroga, pero luego no compareció. Vemos, pues, que su conducta ha tenido el único efecto de dilatar los procedimientos. En vista de lo anterior, estamos plenamente convencidos de que el licenciado Fontánez violó, con su conducta, tanto el Canon 9 como el Canon 12 del Código de Ética Profesional, *supra*.

En el tercer cargo de la querella, se le imputa al licenciado Fontánez haber violado el Canon 38 del Código de Ética Profesional, *supra*, al incurrir en conducta impropia y no esforzarse al máximo de su capacidad en la exaltación del honor y la dignidad de la profesión legal.

Como señaláramos anteriormente, la mayoría de los documentos públicos autorizados por el licenciado Fontánez carecen de las firmas e iniciales de los otorgantes y, en algunos casos, testigos instrumentales, así como de la rúbrica y el sello del notario. Como se sabe, estas deficiencias son de carácter grave y causan la nulidad de los documentos afectados por éstas. Art. 34 de la Ley Notarial, 4 L.P.R.A. sec. 2052. Véanse, además, <u>In re: Mesonero Hernández</u>, res. el 30 de abril de 2008, 2008

T.S.P.R. 78; In re: Nieves Nieves, res. el 3 de julio de 2007, 2007 T.S.P.R. 139. Por lo general, tal efecto de nulidad perjudica a los otorgantes de las escrituras, quienes podrían sufrir las consecuencias jurídicas que pretendieron evitar. En el caso de los testamentos, el perjuicio es aún más notorio, pues, como se sabe, la nulidad del documento afecta la institución de herederos en sí misma.

Las deficiencias en la obra notarial del licenciado Fontánez trascienden la falta de firmas. En su desempeño como notario, el abogado ha infringido otras disposiciones de la Ley Notarial, a saber: el Art. 32, 4 L.P.R.A. sec. 2050, por haber dejado espacios en blanco en diversas escrituras; el Art. 49, 4 L.P.R.A. sec. 2073, por no haber enumerado las páginas del protocolo; el Art. 50, 4 L.P.R.A. sec. 2074, por no haber hecho todas las notas de apertura y cierre en sus protocolos; el Art. 41, 4 L.P.R.A. sec. 2063, por no haber hecho la nota de saca en la escritura matriz; el Art. 10, 4 L.P.R.A. sec. 2021, por no haber adherido y cancelado los aranceles dispuestos por ley en el original de cada escritura, y el Art. 52, 4 L.P.R.A. sec. 2076, por no haber encuadernado los protocolos. De todas estas deficiencias, el querellado subsanó solamente las deficiencias arancelarias y la encuadernación de sus protocolos. Según surge del último informe de la O.D.I.N., las demás deficiencias aún no han sido subsanadas, para desdicha de los otorgantes.

Vemos, pues, que el licenciado Fontánez no ha ejercido la labor notarial con el esmero, cuidado y celo profesional que se espera de un notario en nuestro ordenamiento. Más aún, su pobre desempeño podría tener consecuencias funestas sobre las personas que confiaron en él. Asimismo, no ha actuado con la limpieza, lealtad y escrupuloso sentido de responsabilidad que exigimos de un abogado. En vista de lo anterior, es forzoso concluir que el licenciado Fontánez ha incurrido en conducta impropia que lo desmerece como abogado, en incumplimiento con el deber de exaltar la dignidad y el honor de la profesión, según lo exige el Canon 38 del Código de Ética Profesional, *supra*.

Por último, en el cuarto cargo de la querella, se le imputa al licenciado Fontánez haber violado varias disposiciones de la Ley Notarial, *supra*, a saber: el Art. 7 (sobre la práctica ilícita de la profesión), el Art. 29 (sobre la subsanación de defectos) y los Arts. 16 y 29 (sobre la falta de firmas e iniciales en los documentos notariales).

Sobre la imputación de que el licenciado Fontánez ejerció el notariado sin estar autorizado para ello, el Comisionado Especial hizo las siguientes determinaciones de hechos.

El 3 de junio de 2003, diez días antes de que fuera suspendido de la abogacía y la notaría, el licenciado Fontánez otorgó una escritura de compraventa de un inmueble que luego fue presentada para su inscripción en el Registro

de la Propiedad. Tres años después, estando suspendido del ejercicio de la notaría, expidió una segunda "copia simple certificada" bajo su firma y sello notarial. De igual forma, en 2005, otorgó otra escritura sobre "acta aclaratoria" bajo su firma y sello.

Luego, en el 2007, el abogado autorizó una declaración de "no propiedad" de un participante del Programa de Vivienda de Sección 8 del Municipio de Caguas, la cual fue jurada y suscrita ante él, mediante el afidávit 11,306. Posteriormente, en octubre de ese mismo año, el licenciado Fontánez admitió ante la Directora de la O.D.I.N. que había autorizado un total de ocho declaraciones juradas de "no propiedad" para el Departamento de la Vivienda del Municipio de Caguas.

Todas estas escrituras y el referido afidávit contienen la firma del licenciado Fontánez y la impresión de un sello notarial idéntico al que un alguacil de este Tribunal incautó en el 2003. Esto es evidencia indirecta de que el abogado tenía dos sellos idénticos, de los cuales retuvo uno, o, en la alternativa, de que mandó a hacer una réplica del sello incautado. En cualquier caso, queda claro que el licenciado Fontánez ejerció el notariado mientras se hallaba suspendido de tal ejercicio, es decir, sin autorización para ello. Asimismo, su conducta constituye un

desacato a la autoridad de este Tribunal. Art. 284 del Código Penal, 33 L.P.R.A. sec. 4912.[10]

Se le imputa además al licenciado Fontánez haber violado el Art. 29 de la Ley Notarial, *supra*, sobre la subsanación de errores que surjan en un instrumento público y sean percibidos luego de su autorización. Sobre este particular, basta reiterar que en repetidas ocasiones hemos ordenado al hoy querellado que subsane las deficiencias graves en su obra notarial y no lo ha hecho. En los siete años que han pasado desde que su obra notarial fuera incautada, su gestión se ha limitado a subsanar las deficiencias arancelarias y encuadernar sus protocolos. Es evidente que el querellado no ha cumplido con su deber de subsanar las deficiencias señaladas por la O.D.I.N.

Asimismo, se le imputa al licenciado Fontánez haber infringido los Art. 16 y 29 de la Ley Notarial, *supra*, sobre el requisito de que, por un lado, los otorgantes firmen y estampen sus iniciales en la escritura y, por el otro, el notario rubrique, signe y selle la escritura. Ya hemos establecido que la mayoría de las escrituras otorgadas por el abogado adolecen de esta deficiencia de carácter gravísimo. No es necesario, pues, volver sobre este asunto.

Estamos convencidos de que el licenciado Fontánez incurrió en la conducta imputada en la querella en su

---

[10]De igual forma, el abogado burló a los consumidores que procuraron tales servicios notariales y su conducta podría constituirse como un delito bajo el Código Penal.

contra. Por consiguiente, procede tomar la acción disciplinaria que estimemos apropiada. En vista de la gravedad de las faltas cometidas por el licenciado Fontánez, la sanción más adecuada es la suspensión inmediata e indefinida del ejercicio de la profesión. Además, acogemos la recomendación del Comisionado Especial en el sentido de que se refiera el caso al Secretario de Justicia para que éste determine si la conducta del abogado constituye delito bajo el Código Penal y, de éste ser el caso, si la acción penal está prescrita o no.

El licenciado Fontánez notificará a sus clientes que por motivo de la suspensión no puede continuar con su representación legal, y devolverá a éstos los expedientes de cualquier caso pendiente y los honorarios recibidos por trabajos no realizados. De igual forma, deberá informar de su suspensión a cualquier sala del Tribunal General de Justicia o foro administrativo en el que tenga algún caso pendiente. Por último, se referirá el caso al Secretario de Justicia para que determine si procede iniciar una acción penal contra el abogado.

Se le apercibe al licenciado Fontánez que la presente acción disciplinaria no lo exime de tener que subsanar, a sus expensas, las deficiencias señaladas por la O.D.I.N. en su obra notarial. Dicha obligación subsiste y su desatención lo expone al correspondiente procedimiento de desacato.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Sigfredo Fontánez Fontánez          CP-2008-25          Conducta
                                                        Profesional

SENTENCIA

San Juan, Puerto Rico, a 31 de marzo de 2011.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se suspende inmediata e indefinidamente del ejercicio de la abogacía al Lic. Sigfredo Fontánez Fontánez.

El licenciado Fontánez notificará a sus clientes que por motivo de la suspensión no puede continuar con su representación legal, y devolverá a éstos los expedientes de cualquier caso pendiente y los honorarios recibidos por trabajos no realizados. De igual forma, deberá informar de su suspensión a cualquier sala del Tribunal General de Justicia o foro administrativo en el que tenga algún caso pendiente.

Por último, se referirá el caso al Secretario de Justicia para que determine si procede iniciar una acción penal contra el abogado.

Se le apercibe al licenciado Fontánez que la presente acción disciplinaria no lo exime de tener que subsanar, a sus expensas, las deficiencias señaladas por la O.D.I.N. en su obra

notarial. Dicha obligación subsiste y su desatención lo expone al correspondiente procedimiento de desacato.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera García no interviene.


                                        Aida Ileana Oquendo Graulau
                                        Secretaria del Tribunal Supremo