per curiam:
Hoy debemos separar de la profesión a un abogado que, tras haber ejercido deficientemente el nota-riado, hizo caso omiso de nuestras órdenes para que sub-sanara las deficiencias en su obra notarial y, peor aún, practicó la notaría mientras estaba suspendido. Por las ra- *410 zones que se precisan a continuación, ordenamos la sus-pensión inmediata e indefinida del Ledo. Sigfredo Fontá-nez Fontánez del ejercicio de la abogacía.
I
El licenciado Fontánez Fontánez fue admitido al ejerci-cio de la abogacía y la notaría en el 1979.(1) El 13 de junio de 2003 fue suspendido del ejercicio de la profesión por desatender ciertos requerimientos del Procurador General y de este Tribunal. Como consecuencia, su obra notarial —incluido su sello notarial— fue incautada y entregada a la Oficina de Inspección de Notarías (O.D.I.N.) para el exa-men e informe correspondientes.
Varias semanas después, el 18 de julio de 2003, este Tribunal ordenó la reinstalación del licenciado Fontánez al ejercicio de la abogacía. Su reinstalación al notariado quedó en suspenso, a la espera de que O.D.I.N. emitiera el informe correspondiente sobre la obra notarial incautada. Mientras tanto, su obra notarial, al igual que su sello, per-maneció bajo la custodia de O.D.I.N.
Al examinar la obra notarial del licenciado Fontánez para los años 1999 a 2003, los inspectores de O.D.I.N. des-cubrieron múltiples deficiencias de carácter grave, inclui-das las deficiencias arancelarias ascendentes a $15,378.50 en más del noventa por ciento de las escrituras.(2) Asi-mismo, la mayoría de la obra notarial incautada adolecía de nulidad por no tener las firmas de los otorgantes o tes- *411 tigos instrumentales, así como la firma, la rúbrica, el signo y el sello del notario, entre otras razones.(3)
La Directora de O.D.I.N. hizo constar todas estas defi-ciencias en tres informes parciales, presentados ante nos entre octubre de 2003 y marzo de 2004. Tras revisar el primer informe parcial, este Tribunal emitió una Resolu-ción el 30 de enero de 2004 mediante la cual le concedimos treinta días al licenciado Fontánez para que subsanara las deficiencias señaladas por O.D.I.N. y mostrara causa por la cual, ante las numerosas deficiencias de carácter grave identificadas por O.D.I.N., no debía ser separado de la pro-fesión de abogado. El licenciado Fontánez nos solicitó en-tonces una prórroga de treinta días, la cual concedimos.(4)
Luego que la Directora de O.D.I.N. presentara su tercer y último informe parcial sobre la obra notarial incautada, el 7 de junio de 2004 este Tribunal emitió una segunda Resolución, mediante la cual se ordenó al licenciado Fon-tánez que, dentro de un término de veinte días, subsanara las deficiencias arancelarias ascendentes a $15,378.50, in-formara qué gestiones había realizado para corregir las de-ficiencias señaladas por O.D.I.N. y mostrara causa por la cual no debía ser separado de la profesión. El abogado hizo caso omiso a nuestra orden. Emitimos entonces una ter-cera Resolución en la que le concedimos un término final de veinte días para cumplir con lo ordenado en la Resolu-ción de 7 de junio de 2004.(5) El abogado compareció y nos solicitó otra prórroga de treinta días, la cual otorgamos.(6)
El 12 de enero de 2006, el licenciado Fontánez presentó *412 una moción informativa en la que nos informó que se había reunido con el inspector de protocolos asignado a su caso con el fin de preparar un plan de trabajo para corregir las deficiencias señaladas. Indicó que ello debía poder lograrse en un término “de por lo menos seis meses como término máximo”. Sin embargo, el 8 de mayo de 2006, la Directora de O.D.I.N. presentó una moción informativa en la que se-ñaló que el licenciado Fontánez aún no había corregido las deficiencias de su obra notarial. Destacó que los esfuerzos del inspector de protocolos, dirigidos a corregir las deficien-cias, habían resultado infructuosos y que las únicas gestio-nes realizadas por el abogado habían sido encuadernar sus Protocolos y adherir los sellos de Asistencia Legal a dos tomos de su Registro de Testimonios. Para esa fecha, la deuda por concepto de aranceles ascendía a $10,824.50.
Examinado el escrito de la Directora de O.D.I.N., conce-dimos al abogado un término final e improrrogable de se-senta días para que corrigiera las deficiencias en su obra notarial.(7) Al cabo de los sesenta días, el licenciado Fontá-nez presentó otra moción informativa en la que nos in-formó que se personó a O.D.I.N. para adherir los sellos que faltaban, pero que no pudo hacerlo porque, según alega, no había personal en dicha oficina para supervisar la labor. En vista de lo anterior, otorgamos otro término final e im-prorrogable, esta vez de veinte días, para que corrigiera las deficiencias arancelarias.(8)
Según surge de una moción en cumplimiento de orden de 14 de diciembre de 2006, presentada por la Directora de O.D.I.N., el licenciado Fontánez corrigió las deficiencias arancelarias. Sin embargo, transcurridos más de tres años desde que su obra notarial fuera incautada, este todavía no había corregido las otras deficiencias señaladas, incluida la falta de firmas e iniciales de los otorgantes en numero-sas escrituras.
*413 En vista de lo anterior, concedimos un término de veinte días al licenciado Fontánez para que mostrara causa por la cual no debía ser disciplinado. Luego, tras examinar otra moción en cumplimiento de orden en la que la Directora de O.D.I.N. nos informó que el licenciado Fontánez aún no había subsanado las deficiencias en su obra notarial, con-cedimos al abogado un término adicional de veinte días para que mostrara causa por la cual no debía ser disciplinado.(9) Pasados los veinte días, el licenciado Fon-tánez presentó el 27 de junio de 2007 una moción informa-tiva en la que expuso su plan de trabajo para subsanar las faltas restantes. Asimismo, mediante carta de 3 de agosto de 2007, informó a O.D.I.N. que planificaba tener comple-tadas las actas notariales pertinentes para noviembre de ese año.
Así las cosas, el 5 de noviembre de 2007 la Directora de O.D.I.N. presentó una solicitud de medidas urgentes en la que nos comunicó que el abogado continuaba ejerciendo la notaría a pesar de no tener autoridad para ello. Dicho es-crito hacía referencia a una carta suscrita por el Archivero Notarial del Distrito de Caguas en la que éste revelaba que habían llegado a sus manos unos documentos notariales con la firma del licenciado Fontánez. Dichos documentos habían sido recibidos en el Departamento de la Vivienda del municipio de Caguas. Asimismo, la Directora de O.D.I.N. aludió a una conversación telefónica entre ella y el licenciado Fontánez, en la que este reconoció haber sus-crito varias declaraciones juradas, a pesar de estar suspen-dido del ejercicio de la notaría. Además, la funcionaría llamó nuestra atención al hecho de que el abogado todavía no había subsanado las deficiencias en su obra notarial.
En vista de lo anterior, el 11 de enero de 2008 ordena-mos a la Procuradora General que presentara la querella correspondiente contra el licenciado Fontánez. Conforme a ello, el 2 de octubre de 2008 la Oficina de la Procuradora *414 General presentó una querella en la que se imputaron al abogado tres cargos por violaciones a los siguientes cáno-nes del Código de Ética Profesional, 4 L.P.R.A. Ap. IX: (1) el Canon 9, al incumplir con las órdenes y los términos con-cedidos por este Tribunal para corregir las deficiencias en su obra notarial; (2) el Canon 12, al incurrir en una inde-bida, irrazonable, injustificada y excesiva tardanza en co-rregir su obra notarial, a pesar de los múltiples requeri-mientos y términos concedidos a tales fines por este Tribunal, y (3) el Canon 38, al incurrir en conducta impro-pia y no esforzarse al máximo de su capacidad en la exal-tación del honor y la dignidad de la profesión legal. Ade-más, se le imputó un cuarto cargo por violaciones a varias disposiciones de la Ley Notarial de Puerto Rico, en especí-fico: el Art. 7 (sobre la práctica ilícita de la profesión notarial, 4 L.P.R.A. see. 2011); el Art. 29 (sobre la subsanación de defectos por el notario, 4 L.P.R.A. sec. 2047), y los Arts. 16 y 29 (sobre la firma e iniciales en los documentos nota-riales, 4 L.P.R.A. sees. 2034 y 2047).
El 10 de febrero de 2009 ordenamos al licenciado Fon-tánez que contestara la querella dentro de un término de quince días. El abogado solicitó entonces una prórroga de treinta días. Aunque su petición fue tardía, le concedimos un término adicional de veinte días para contestar la querella. Posteriormente, le conferimos un término final de quince días. Por último, y a petición suya, le otorgamos un término final e improrrogable de diez días. Sin embargo, el licenciado Fontánez nunca contestó la querella en su contra.
El 28 de agosto de 2009 designamos al Hon. Hiram Sán-chez Martínez, ex juez del Tribunal de Apelaciones, como Comisionado Especial para que, en presencia de las partes, recibiera prueba y nos rindiera un informe con sus deter-minaciones de hechos y las recomendaciones que estimara pertinentes. El Comisionado Especial señaló entonces una vista en su fondo para el 29 de septiembre de 2009. A pe- *415 tición del licenciado Fontánez, la vista fue reseñalada para el 30 de noviembre de 2009. A esa vista compareció la Leda. Minnie H. Rodríguez López, en representación de la Ofi-cina de la Procuradora General, pero el querellado no compareció.
Según surge de la minuta de dicha vista, la Procuradora General expresó su intención de someter el caso con los documentos que constan en el expediente de la querella y los documentos suplementarios que constan en el expe-diente personal del licenciado Fontánez. El Comisionado Especial entendió que no había prueba suficiente en el ex-pediente para establecer, como un hecho probado, que el licenciado Fontánez ejerció la notaría sin autoridad para ello. A petición de la Procuradora General, le concedió a esta un término adicional para conseguir la prueba necesaria. A tales efectos, señaló la continuación de la vista para el 26 de enero de 2010. Aunque el licenciado Fontánez fue declarado en rebeldía, este fue notificado del nuevo se-ñalamiento, mas no compareció. En dicha vista, la Procu-radora General presentó el testimonio de la Directora de O.D.I.N. Luego, el 12 de febrero de 2010, la Procuradora presentó una moción con prueba documental adicional.
Así las cosas, el 5 de abril de 2010, el licenciado Fontá-nez presentó ante nos una moción para renunciar perma-nentemente a la práctica de la notaría. En dicho escrito aceptó haber cometido varias imprudencias y ofreció excu-sas por “la dejadez, inapropiada [sic] y la actitud de igno-rar los varios requerimientos” hechos por este Tribunal. En vista de que el Comisionado Especial ya había celebrado la vista en su fondo y que estábamos próximos a recibir su informe, no dimos lugar a la moción de renuncia presen-tada por el abogado.
El 28 de octubre de 2010, el Comisionado Especial pre-sentó su Informe, en el que concluyó que la Procuradora General probó todos los cargos imputados en la querella. Por consiguiente, recomendó la suspensión inmediata e in- *416 definida del licenciado Fontánez del ejercicio de la abogacía. Además, recomendó que se refiriera el caso al Secretario de Justicia para que este determine si la con-ducta del abogado constituyó un delito.
Con el beneficio del Informe presentado por el Comisio-nado Especial, procedemos a resolver.
II
A. Como se sabe, este Tribunal tiene el poder inherente para reglamentar la admisión a la profesión de abogado, así como para tomar acción disciplinaria contra el miembro de la profesión que viola las leyes y los cánones del Código de Etica Profesional. In re Rodríguez Vázquez, 176 D.P.R. 168 (2009); In re Deynes Soto, 164 D.P.R. 327 (2005). Esta facultad disciplinaria, la cual es exclusiva de este Tribunal, se extiende a todo lo relativo al ejercicio de la profesión notarial en Puerto Rico. In re Amundaray Rivera, 163 D.P.R. 251 (2004); In re Madera Acosta, 144 D.P.R. 743 (1998); S. Torres Peralta, El Derecho Notarial Puertorriqueño, ed. especial, San Juan, Pubs. STP, 1995, págs. 2.2-2.3.
El Canon 9 del Código de Ética Profesional, supra, impone a los miembros de la profesión legal el deber de observar para con los tribunales una conducta que se caracterice por el mayor respeto. In re Grau Díaz, 154 D.P.R. 70, 75 (2001). Hemos dicho que “[1]a naturaleza de la función del abogado requiere de éste una escrupulosa atención y obediencia a las órdenes que emiten los tribunales”. In re Dávila Toro, 179 D.P.R. 833, 840 (2010). Desatender estas órdenes constituye una grave ofensa a la autoridad del tribunal, en clara violación al mandato expreso del Canon 9. In re González Carrasquillo, 164 D.P.R. 813 (2005); In re Grau Díaz, supra; In re Otero Fernández, 145 D.P.R. 582 (1998).
Por su parte, el Canon 12 del Código de Ética Pro- *417 fesional, supra, consigna el deber de cada abogado de ejer-cer la máxima diligencia para con las partes, sus compañe-ros y el tribunal. Conforme a ello, el abogado debe evitar dilaciones innecesarias en el trámite y la solución de los casos. In re Flores Ayffán I, 170 D.P.R. 126, 129-130 (2007). Cabe recordar que “los abogados son funcionarios del tribunal y, como tales, están llamados a ayudarlos en su misión de hacer justicia rápida y económica”. Neptune Packing Corp. v. Wackenhut Corp., 120 D.P.R. 283, 291 (1988).
A su vez, el Canon 38 del Código de Ética Profesional, supra, exige a todo abogado que se conduzca en forma que exalte la dignidad y el honor de su profesión. Este deber responde a la confianza depositada en el abogado como miembro de la ilustre profesión legal. In re Sepulveda, Casiano, 155 D.P.R. 193 (2001). Reiteradamente, al interpretar el referido precepto, hemos expresado que cada abogado es un espejo en el cual se refleja la imagen de la profesión, por lo que debe actuar, tanto en su vida profesional como en su vida privada, con limpieza, lealtad y el más escrupuloso sentido de responsabilidad. In re Curras Ortiz, 174 D.P.R. 502 (2009); In re Coll Pujols, 102 D.P.R. 313 (1974).
Por otro lado, es norma establecida que el criterio probatorio a utilizarse en los procedimientos disciplinarios es aquel de prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas. In re Caratini Alvarado, 153 D.P.R. 575 (2001). Dicho criterio requiere una carga probatoria más fuerte que la mera preponderancia de la prueba, ya que en estos procesos está en juego el título de un abogado y, por ende, su derecho a ganar su sustento. Id. Aunque el referido estándar de prueba no es susceptible de una definición precisa, la prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas *418 son altamente probables. In re Ruiz Rivera, 168 D.P.R. 246 (2006); In re Rodríguez Mercado, 165 D.P.R. 630 (2005).
Por último, según la Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba. Al desempeñar una función similar al juzgador de instancia, el Comisionado Especial está en mejor posición para aquilatar la prueba testifical y adjudicar credibilidad, por lo que sus determinaciones fácticas merecen nuestra mayor deferencia. In re Acevedo Alvarez, 178 D.P.R. 685 (2010); In re Gordon Menéndez 1, 171 D.P.R. 210 (2007); In re Morales Soto, 134 D.P.R. 1012 (1994). Por lo tanto, aunque este Tribunal no está obligado a aceptar el informe de un Comisionado Especial en un procedimiento disciplinario contra un abogado, sino que podemos adoptar, modificar o rechazar tal informe, de ordinario sostendre-mos las determinaciones de hecho de un Comisionado Especial, salvo que se demuestre prejuicio, parcialidad o error manifiesto. In re Pagán Pagán, 171 D.P.R. 975 (2007); In re Morell, Alcover, 158 D.P.R. 791 (2003); In re Soto López, 135 D.P.R. 642 (1994).
B. Por otra parte, como es sabido, la notaría es una función de cuidado que debe ser ejercida con suma diligencia y celo profesional. In re Bringas Rechani, 128 D.P.R. 132, 134 (1991); In re Alvarado Tizol, 122 D.P.R. 587 (1988); In re Rodríguez Mena, 126 D.P.R. 205 (1990). Los notarios están obligados a cumplir estrictamente con lo dispuesto en la Ley Notarial de Puerto Rico y en los cánones del Código de Etica Profesional. In re Bringas Rechani, supra, pág. 134. El incumplimiento con estas fuentes de obligaciones y deberes los expone a la acción disciplinaria correspondiente. íd.; In re Raya, 117 D.P.R. 797, 804 (1986); In re Cruz Tollinche, 114 D.P.R. 205 (1983).
El Art. 7 de la Ley Notarial de Puerto Rico, supra, establece los requisitos para poder ejercer el notariado en *419 nuestra jurisdicción. En lo pertinente a este caso, este ar-tículo dispone que “[s]ólo podrán practicar la profesión notarial en el Estado Libre Asociado quienes estuvieren au-torizados para ejercerla actualmente y los abogados que en el futuro fueren admitidos al ejercicio de la profesión, y que en lo sucesivo sean autorizados por el Tribunal Supremo de Puerto Rico para ejercer el notariado”. 4 L.P.R.A. sec. 2011.
Por su parte, el Art. 29 de la Ley Notarial de Puerto Rico, supra, establece la forma en que se corregirán los defectos que surjan en un instrumento público y que sean percibidos luego de su autorización. En síntesis, este artículo dispone que los defectos de que adolezcan los documentos notariales ínter vivos podrán ser subsanados por los mismos otorgantes o por sus herederos o causahabientes mediante una escritura pública en que se haga constar el defecto, su causa y la declaración que lo subsana. Hemos dicho que esta disposición toma en consideración la posibilidad de que se cometan errores al otorgar un instrumento público. In re Rivera Vázquez, 155 D.P.R. 267, 280 (2001). Para preservar la verdad y la fe pública notarial, el notario debe seguir estrictamente este procedimiento para la corrección de defectos en los instrumentos públicos. íd.
A su vez, el Art. 16 de la Ley Notarial de Puerto Rico, supra, establece el requisito de la firma e iniciales en los instrumentos públicos. A tales efectos, dicho artículo dispone:
Los otorgantes y los testigos firmarán la escritura y además estamparán las letras iniciales de su nombre y apellido o ape-llidos al margen de cada una de las hojas del instrumento, las cuales rubricará y sellará el notario.
Sobre este particular, hemos dicho que la firma es un requisito fundamental en la escritura pública, pues de-muestra que el otorgante aprueba el texto escrito que an-tecede la firma. In re Nieves Nieves, 171 D.P.R. 843, 852 (2007); In re González Maldonado, 152 D.P.R. 871 (2000). *420 La omisión de la firma de uno o más de los otorgantes o testigos no sólo es una falta notarial grave y una violación a la fe pública, sino que es causa de nulidad del instru-mento público. In re Vargas Cintrón, 153 D.P.R. 520 (2001).
A lo anterior se suma lo establecido en el Art. 28 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2046, que dispone:
Los que suscriban un instrumento público en cualquier con-cepto, lo harán firmando al final y estampando las iniciales de su nombre y apellido o apellidos al margen de todos los folios, en la forma que habitualmente empleen y el notario lo hará a continuación de los mismos, rubricándolo, signándolo y sellándolo.
Si no hubiere testigos instrumentales, será innecesario que los comparecientes firmen el documento todos juntos en pre-sencia del notario, sino que éste podrá recibir personalmente sus firmas en cualquier tiempo, dentro del mismo día natural del otorgamiento, con arreglo a lo expresado en la see. 2042 de este título.
El notario tiene, pues, la responsabilidad de que se observen en el acto de otorgamiento todas las solemnidades requeridas y de que el documento cumpla con todos los requisitos exigidos por la Ley Notarial de Puerto Rico. Incumplir con estas obligaciones podría conllevar serias sanciones disciplinarias.
Con estos preceptos en mente, atendamos la controver-sia ante nuestra consideración.
III
En el primer cargo en su contra, se imputa al licenciado Fontánez haber violado el Canon 9 del Código de Ética Profesional, supra, al incumplir con las órdenes y los tér-minos concedidos por este Tribunal para que corrigiera las deficiencias en su obra notarial. A su vez, en el segundo cargo se le imputa haber infringido el Canon 12 del Código de Ética Profesional, supra, al incurrir en una indebida, *421 irrazonable, injustificada y excesiva tardanza en corregir su obra notarial, a pesar de los múltiples requerimientos y términos concedidos a esos fines por este Tribunal. Enten-demos que el licenciado Fontánez violó ambos cánones de ética profesional. Veamos.
Este Tribunal ha concedido múltiples oportunidades al licenciado Fontánez para que subsane las deficiencias con carácter grave señalados en su obra notarial. A tales efec-tos, entre enero de 2004 y octubre de 2008 —fecha cuando se presentó la querella— este Tribunal emitió al menos seis Resoluciones en las que le ordenó al querellado que subsanara las referidas deficiencias o mostrara causa por la que no debía ser suspendido del ejercicio de la abogacía por tal incumplimiento, o ambas cosas. El licenciado Fon-tánez desatendió todas estas órdenes.
Aún hoy, su gestión se ha limitado a encuadernar cier-tos Protocolos y a subsanar las deficiencias arancelarias. El abogado tampoco cumplió con su deber de contestar la querella presentada contra él, aun cuando solicitó una pró-rroga para ello. Lo mismo hizo cuando el Comisionado Especial señaló una vista en su fondo: solicitó una prórroga, pero luego no compareció. Vemos, pues, que su conducta ha tenido el único efecto de dilatar los procedimientos. En vista de lo anterior, estamos plenamente convencidos de que con su conducta el licenciado Fontánez violó tanto el Canon 9 como el Canon 12 del Código de Etica Profesional, supra.
En el tercer cargo de la querella se imputa al licenciado Fontánez haber violado el Canon 38 del Código de Ética Profesional, supra, al incurrir en conducta impropia y no esforzarse al máximo de su capacidad en la exaltación del honor y la dignidad de la profesión legal. Como señalára-mos anteriormente, la mayoría de los documentos públicos autorizados por el licenciado Fontánez carecen de las fir-mas e iniciales de los otorgantes —y, en algunos casos, tes-tigos instrumentales— así como de la rúbrica y del sello *422 del notario. Como se sabe, estas deficiencias son de carác-ter grave y causan la nulidad de los documentos afectados por estas. Art. 34 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. see. 2052. Véanse, además: In re Mesonero Hernández, 173 D.P.R. 632 (2008); In re Nieves Nieves, supra. Por lo general, tal efecto de nulidad perjudica a los otor-gantes de las escrituras, quienes podrían sufrir las conse-cuencias jurídicas que pretendieron evitar. En el caso de los testamentos, el perjuicio es aún más notorio pues, como se sabe, la nulidad del documento afecta la institución de herederos en sí misma.
Las deficiencias en la obra notarial del licenciado Fon-tánez trascienden la falta de firmas. En su desempeño como notario, el abogado ha infringido otras disposiciones de la Ley Notarial de Puerto Rico, a saber: el Art. 32 (4 L.P.R.A. see. 2050), por haber dejado espacios en blanco en diversas escrituras; el Art. 49 (4 L.P.R.A. sec. 2073), por no haber enumerado las páginas del Protocolo; el Art. 50 (4 L.P.R.A. sec. 2074), por no haber hecho todas las notas de apertura y cierre en sus Protocolos; el Art. 41 (4 L.P.R.A. sec. 2063), por no haber hecho la nota de saca en la escri-tura matriz; el Art. 10 (4 L.P.R.A. sec. 2021), por no haber adherido y cancelado los aranceles dispuestos por ley en el original de cada escritura, y el Art. 52 (4 L.P.R.A. sec. 2076), por no haber encuadernado los Protocolos. De todas estas deficiencias, el querellado subsanó solamente las de-ficiencias arancelarias y la encuadernación de sus Protocolos. Según surge del último informe de O.D.I.N., las demás deficiencias aún no han sido subsanadas, para des-dicha de los otorgantes.
Vemos, pues, que el licenciado Fontánez no ha ejercido la labor notarial con el esmero, cuidado y celo profesional que se espera de un notario en nuestro ordenamiento. Más aún, su pobre desempeño podría tener consecuencias fu-nestas sobre las personas que confiaron en él. Asimismo, no ha actuado con la limpieza, la lealtad y el escrupuloso *423 sentido de responsabilidad que exigimos de un abogado. En vista de lo anterior, es forzoso concluir que el licenciado Fontánez ha incurrido en una conducta impropia que lo desmerece como abogado, en incumplimiento con el deber de exaltar la dignidad y el honor de la profesión, según lo exige el Canon 38 del Código de Etica Profesional, supra.
Por último, en el cuarto cargo de la querella se imputa al licenciado Fontánez haber violado varias disposiciones de la Ley Notarial de Puerto Rico, supra, a saber: el Art. 7 (sobre la práctica ilícita de la profesión), el Art. 29 (sobre la subsanación de defectos) y los Arts. 16 y 29 (sobre la falta de firmas e iniciales en los documentos notariales).
Sobre la imputación de que el licenciado Fontánez ejer-ció el notariado sin estar autorizado para ello, el Comisio-nado Especial hizo las determinaciones de hechos siguientes.
El 3 de junio de 2003, diez días antes de que fuera sus-pendido de la abogacía y la notaría, el licenciado Fontánez otorgó una escritura de compraventa de un inmueble que luego fue presentada para su inscripción en el Registro de la Propiedad. Tres años después, estando suspendido del ejercicio de la notaría, expidió una segunda “copia simple certificada” bajo su firma y sello notarial. De igual forma, en el 2005 otorgó otra escritura sobre “acta aclaratoria” bajo su firma y sello.
Luego, en el 2007, el abogado autorizó una declaración de “no propiedad” de un participante del Programa de Vi-vienda de Sección 8 del municipio de Caguas, la cual fue jurada y suscrita ante él mediante el Affidávit 11,306. Pos-teriormente, en octubre de ese mismo año, el licenciado Fontánez admitió ante la Directora de O.D.I.N. que había autorizado un total de ocho declaraciones juradas de “no propiedad” para el Departamento de la Vivienda del muni-cipio de Caguas.
Todas estas escrituras y el referido affidávit contienen la firma del licenciado Fontánez y la impresión de un sello *424 notarial idéntico al que un alguacil de este Tribunal in-cautó en el 2003. Esto es evidencia indirecta de que el abo-gado tenía dos sellos idénticos, de los cuales retuvo uno, o en la alternativa, de que mandó a hacer una réplica del sello incautado. En cualquier caso, queda claro que el li-cenciado Fontánez ejerció el notariado mientras se hallaba suspendido de tal ejercicio, es decir, sin autorización para ello. Asimismo, su conducta constituye un desacato a la autoridad de este Tribunal. Art. 284 del Código Penal, 33 L.P.R.A. sec. 4912.(10)
Se le imputa, además, al licenciado Fontánez haber vio-lado el Art. 29 de la Ley Notarial de Puerto Rico, supra, sobre la subsanación de errores que surjan en un instru-mento público y sean percibidos luego de su autorización. Sobre este particular, basta reiterar que en repetidas oca-siones hemos ordenado al hoy querellado que subsane las deficiencias graves en su obra notarial y no lo ha hecho. En los siete años que han pasado desde que su obra notarial fuera incautada, su gestión se ha limitado a subsanar las deficiencias arancelarias y encuadernar sus Protocolos. Es evidente que el querellado no ha cumplido con su deber de subsanar las deficiencias señaladas por O.D.I.N.
Asimismo, se imputa al licenciado Fontánez haber in-fringido los Art. 16 y 29 de la Ley Notarial de Puerto Rico, supra, sobre el requisito de que, por un lado, los otorgantes firmen y estampen sus iniciales en la escritura y, por el otro, el notario rubrique, signe y selle la escritura. Ya he-mos establecido que la mayoría de las escrituras otorgadas por el abogado adolecen de esta deficiencia de carácter gravísimo. No es necesario, pues, volver sobre este asunto.
Estamos convencidos de que el licenciado Fontánez in-currió en la conducta imputada en la querella en su contra. Por consiguiente, procede tomar la acción disciplinaria que *425 estimemos apropiada. En vista de la gravedad de las faltas cometidas por el licenciado Fontánez, la sanción más ade-cuada es la suspensión inmediata e indefinida del ejercicio de la profesión. Además, acogemos la recomendación del Comisionado Especial en el sentido de que se refiera el caso al Secretario de Justicia para que este determine si la conducta del abogado constituye delito bajo el Código Penal y, de este ser el caso, si la acción penal está prescrita o no.
El licenciado Fontánez notificará a sus clientes que, por motivo de la suspensión, no puede continuar con su repre-sentación legal y les devolverá los expedientes de cualquier caso pendiente y los honorarios recibidos por trabajos no realizados. De igual forma, deberá informar de su suspen-sión a cualquier sala del Tribunal General de Justicia o foro administrativo en el que tenga algún caso pendiente. Por último, se referirá el caso al Secretario de Justicia para que determine si procede iniciar una acción penal contra el abogado.
Se apercibe al licenciado Fontánez que la presente ac-ción disciplinaria no lo exime de tener que subsanar, a sus expensas, las deficiencias señaladas por O.D.I.N. en su obra notarial. Dicha obligación subsiste y su desatención lo expone al correspondiente procedimiento de desacato.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera García no interviene.

 El 20 de abril de 1979 y el 18 de junio de 1979, respectivamente.

 Entre las faltas de carácter grave señaladas por la Oficina de Inspección de Notarías (O.D.I.N.) en la obra notarial del licenciado Fontánez se encontraban: (1) falta de encuadernación de las escrituras; (2) omisión del sello, rúbrica y firma del notario; (3) omisión de las iniciales y firma de los otorgantes y testigos; (4) falta de numeración interna de cada instrumento; (5) folios en blanco con solamente las fir-mas de los otorgantes; (6) exceso de espacios en blanco; (7) falta de nota de saca, y (8) no dar fe de la unidad del acto cuando se requería.

 Por ejemplo, en el 2001, el licenciado Fontánez autorizó ochenta y cinco escrituras. De estas, setenta y siete adolecían de nulidad porque faltaba, ya sea la firma de los otorgantes o la firma, la rúbrica y el sello del notario. En el 2002 auto-rizó noventa y nueve escrituras. De estas, alrededor de setenta —incluidos seis tes-tamentos abiertos— adolecían de nulidad por las faltas ya señaladas, así como por no dar fe de la unidad del acto en aquellos casos en que comparecieron testigos instrumentos.

 Resolución de 31 de marzo de 2004.

 Resolución de 21 de octubre de 2005.

 Resolución de 18 de noviembre de 2005.

 Resolución de 9 de junio de 2006.

 Resolución de 6 de octubre de 2006.

 Resolución de 1 de junio de 2007.

 De igual forma, el abogado burló a los consumidores que procuraron tales servicios notariales y su conducta podría constituir un delito bajo el Código Penal.